**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
msirota@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com

*Proposed Counsel to Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
(212) 446-4900 Facsimile
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
joshua.sussberg@kirkland.com
Christopher T. Greco, P.C. (*pro hac vice* pending)
christopher.greco@kirkland.com
Rachael M. Bentley (*pro hac vice* pending)
rachael.bentley@kirkland.com

*-and-*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
(312) 862-2200 Facsimile
Alexandra Schwarzman, P.C. (*pro hac vice* pending)
alexandra.schwarzman@kirkland.com

*Proposed Counsel to Debtors*

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, LLC, *et al.*, | Case No. 23-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

## DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
## (I) AUTHORIZING THE DEBTORS TO PAY OR HONOR PREPETITION CLAIMS OF
## (A) CRITICAL VENDORS AND (B) LIEN CLAIMANTS
## AND (II) GRANTING RELATED RELIEF

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); and Blueprint Registry, LLC (2335).  The location of debtor David's Bridal, LLC's principal place of business and the debtors' service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

The above-captioned debtors and debtors in possession (collectively, the "Debtors")[2] respectfully state as follows in support of this motion (this "Motion"):

### Relief Requested

1.      By this Motion, the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Interim Order" and "Final Order", respectively), (i) authorizing the Debtors to pay or honor prepetition claims of (a) Critical Vendors and (b) Lien Claimants (each as defined herein) and (ii) granting related relief.  In addition, the Debtors request that the Court schedule a final hearing within approximately 21 days after the commencement of these chapter 11 cases to consider entry of the Final Order.

### Jurisdiction and Venue

2.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference of the Bankruptcy Court Under Title 11*, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.).  The Debtors confirm their consent to the Court entering a final order in connection with this Motion to the extent that it is later determined that the Court absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[2]  A detailed description of the Debtors, their business, and the facts and circumstances supporting these chapter 11 cases is set forth in the *Declaration of James Marcum, Chief Executive Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith.  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the First Day Declaration.

65783/0001-45032473

4.      The bases for the relief requested herein are sections 105(a), 363(b), 503(b), 1107(a), and 1108 of title 11 of the United States Code (the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 9013-1 and 9013-5 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

### Background

5.      As set forth in the First Day Declaration, the Debtors are international bridal and special occasion retailers.  The Debtors sell a broad assortment of bridal gowns, bridesmaid dresses, special occasion dresses and accessories.  As of the date hereof, the Debtors and their non-debtor subsidiaries operate 294 stores across the United States, Canada, and United Kingdom and franchise 8 stores in Mexico.  The Debtors are headquartered in Conshohocken, Pennsylvania and currently employ approximately 10,000 employees.

6.      On the date hereof (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  Concurrently with the filing of this Motion, the Debtors filed a motion requesting procedural consolidation and joint administration of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b).  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

### Trade Claims Overview

7.      In the ordinary course of business, the Debtors rely on various entities to provide goods and services related to their business operations that are essential to maintaining business continuity, delivering products to customers in a timely manner and, ultimately, maintaining customer satisfaction.  Specifically, the Debtors depend on (a) merchandise vendors, including the

Debtors' joint venture, Fillberg Limited ("Fillberg"),[3] that provide sourcing, manufacturing, and design services, ready-made bridal garments and accessories, and alteration and heirlooming services ("Merchandise Vendors"), (b) non-merchandise service providers that provide technical support for brick-and-mortar stores and the Debtors' website, maintenance of the Debtors' stores and distribution centers, marketing services, and other essential services ("Non-Merchandise Vendors" which together with the Merchandise Vendors are collectively referred to as the "Critical Vendors," and the claims owed to the Critical Vendors, the "Critical Vendor Claims"), and (c) shippers, warehousemen, and other lien claimants ("Lien Claimants" which together with the Critical Vendors are collectively referred to as the "Trade Claimants" and the claims owed to the Trade Claimants, the "Trade Claims").

8.      The Debtors' retail business depends on the uninterrupted access to merchandise and other goods and services provided by the Debtors' network of Trade Claimants including, most importantly, the vendors of ready-made bridal garments and related products and accessories that the Debtors sell to brides and other special occasion customers.  Moreover, given the nature of the Debtors' business, where brides, bridal parties and other customers purchase merchandise from the Debtors for weddings or other singularly important events, the Debtors rely on timely delivery of goods and services from the Trade Claimants to satisfy customer orders.

9.      As of the Petition Date, the Debtors owe approximately $27.5 million on account of all accounts payable to the Debtors' trade creditors.  By this Motion, the Debtors are only seeking to pay an amount necessary to the Trade Claimants to preserve the value of their estates,

---

[3]  Fillberg is a Hong Kong corporation in which the Debtors own a 50% interest.  The other 50% interest is owned by unaffiliated parties.

65783/0001-45032473

which shall not exceed $7 million on an interim basis.  The Debtors intend to apply their business judgment and pay only those Trade Claims that are critical to maintain the supply chain.

## I.    The Critical Vendors

10.    The Debtors rely on their relationships with certain Merchandise Vendors to maintain the flow of merchandise critical to their business and to facilitate the Debtors' ability to respond quickly and effectively to changes in customer demands, including their four joint ventures incorporated under the laws of, and operating out of, Hong Kong (the "Foreign Affiliates").  In particular, the Debtors source more than 87% of their merchandise through their Foreign Affiliate, Fillberg, which is the exclusive buying agent for the Debtors outside of North America and is the conduit through which the Debtors deal with approximately 30 foreign suppliers and vendors consisting of fabric mills and production factories in China, Sri Lanka, and other locations.  Fillberg supplied the Debtors with approximately $120 million in merchandise during 2022.  The arrangement between the Debtors and Fillberg is on arm's-length terms.  The Debtors purchase goods from Fillberg without any mark-up and, in return, pay Fillberg a commission payment consistent with the rates charged by third-party sourcing offices and manufacturing partners in the industry.  The Debtors are Fillberg's largest customer,[4] and Fillberg has limited working capital.  As a result, Fillberg would not have sufficient funds to pay its suppliers if the Debtors did not pay the amounts they owe to Fillberg.  As of the Petition Date, the Debtors owe Fillberg $5.5 million.

11.    In addition to the Merchandise Vendors, the Debtors engage a number of Non-Merchandise Vendors to provide critical services and other supplies the Debtors depend upon to fulfill their customers' needs including, without limitation, marketing and advertising, packaging

---

[4] Fillberg only has two (2) customers.

5

and information technology.  If the Debtors were required to seek different vendors to provide these critical services and supplies, the Debtors' transition to Chapter 11 would be impaired.  Such harm would outweigh the cost of payment to the Non-Merchandise Vendors.  As of the Petition Date, the Debtors estimate that they will need to pay Non-Merchandise Vendors approximately $1.3 million to ensure the provisions of critical services and supplies.

### A.    The Critical Vendor Analysis

12.    The Debtors are mindful of their fiduciary obligations to seek to preserve and maximize the value of their estates.  Toward that end, the Debtors have carefully estimated all potential vendor claims as of the Petition Date, including the Critical Vendor Claims, and have determined that the ability to satisfy Critical Vendor Claims is absolutely necessary to maximize value and avoid immediate and irreparable harm to the Debtors during this critical stage.  To be clear, the Debtors are aware of the need to seek relief only for those vendors truly critical to the Debtors' efforts to maximize value in these chapter 11 cases.

13.    Implicit in the Debtors' businesses is their reliance on services provided by the Critical Vendors.  The Debtors, with the assistance of their advisors, carefully reviewed approximately 600 vendors to determine, among other things, (i) which vendors were sole source or limited source vendors, without whom the Debtors could not continue to operate without disruption, (ii) the Debtors' ability to find alternative sources for services and the potential disruption or lost revenues while a new vendor is sourced, (iii) which vendors would be prohibitively expensive to replace, and (iv) which vendors would present an unacceptable risk to the Debtors' operations given the volume of merchandise and/or services provided or the ability to assert a lien.

14.    Of the Debtors' approximately 600 total vendors, the Debtors identified a select group of Critical Vendors, which comprise approximately 26% of the cumulative accounts payable

6

balance as of the Petition Date.[5]  The Debtors seek relief to pay approximately $7.0 million on account of Critical Vendor Claims during the course of these chapter 11 and estimate that they need to pay approximately $6.9 million of the Critical Vendor Claims during the 21 days of these chapter 11 cases.

## II.    The Lien Claimants

15.    The Debtors' business depends on the uninterrupted flow of merchandise through their supply chain and distribution network, including the importation, storage, and shipment of the Debtors' merchandise.  In the second leg of the Debtors' supply chain, carriers (the "Shippers" and the claims owed to the Shippers, the "Shipper Claims") take possession of product delivered by foreign vendors to ports and then transport the product to the Debtors' two distribution centers located in Pennsylvania (the "Fulfillment and Distribution Centers").  Shippers are also responsible for shipping merchandise from the Fulfillment and Distribution Centers to the Debtors' approximately 294 store locations, as well as the Debtors' e-commerce customers.  The flow of merchandise from the Debtors' vendors to the Fulfillment and Distribution Centers and, ultimately, to stock the Debtors' domestic brick and mortar stores or fulfill orders placed on the Debtors' website depends on the services provided by the Shippers.  The Shippers hold a possessory interest in the merchandise and may decline to deliver merchandise until the Debtors pay outstanding balances on previous services.  Such an outcome could cause significant disruptions to the operation of the Debtors' businesses that would impede their ability to operate successfully in chapter 11.

---

[5]  A list of the Critical Vendors and the proposed payments to each shall be made available, upon request, to the Court, the Office of the United States Trustee for Region 3, and any statutory committee of creditors formed in these chapter 11 cases.

16.     As of the Petition Date, the Debtors estimate that they owe approximately $2.0 million on account of claims to the Shippers.  The Debtors estimate that the value of the merchandise in the Shippers' possession substantially exceeds the amounts the Debtors owe to those creditors.  The inability to ship or receive essential materials for use in the ordinary course of the Debtors' businesses would leave the Debtors unable to properly function.  Failure to pay the amounts owed to the Shippers could preclude the Debtors from obtaining the property currently in the possession of the Shippers and would make it difficult or impossible for the Debtors to obtain post-petition shipping services.

17.     Upon receipt of merchandise from the Shippers, the Debtors process the merchandise in the Fulfillment and Distribution Centers.  The Fulfillment and Distribution Centers are operated by the Debtors' employees, but the premises are leased from third parties.  Employees of the Debtors preform various duties to prepare the merchandise to be further shipped to store locations or to the Debtors' e-commerce customers.

18.     Finally, the Debtors regularly contract with third-party contractors that may assert a variety of statutory, common law, or possessory liens against the Debtors and their properties if the Debtors fails to pay for certain goods or services (the "Third-Party Contractors").  These Third-Party Contractors perform various services for the Debtors, including the installation and repair of certain equipment in the Debtors' stores, maintenance of the Debtors' facilities and other related services.

19.     Under certain non-bankruptcy law, Lien Claimants (including but not limited to, Shippers, warehousemen and Third-Party Contractors) may be able to assert liens on the goods in their possession to secure payment of the charges or expenses incurred in connection with these prepetition obligations (collectively, the "Lien Claims").  Accordingly, in the event these claims

8

remain unpaid, the Lien Claimants could attempt to assert such possessory liens and refuse to deliver or release goods in their possession until their claims are satisfied and their liens redeemed. The Lien Claimants' possession (and retention) of the Debtors' goods and supplies would disrupt the Debtors' operations and affect the Debtors' ability to efficiently administer these chapter 11 cases. The cost of such disruption would likely be greater than the applicable Lien Claims.

20.     Thus, to maintain access to merchandise that is essential to the administration of these chapter 11 cases, the Debtors seek authority to pay certain amounts owed to Lien Claimants in the aggregate amount of $2.0 million.

21.     For the avoidance of doubt, the Debtors seek authority to pay only those amounts they determine, in their sole discretion, as necessary or appropriate to (a) obtain release of critical or valuable goods, (b) maintain a reliable, efficient, and smooth distribution system and (c) induce the Lien Claimants to continue performing and otherwise supporting the Debtors' operations on a post-petition basis.

### **Relief Requested**

22.     Pursuant to sections 105(a), 363, and 503(b) of the Bankruptcy Code, the Debtors request interim and final authority to pay the Trade Claims in an amount not to exceed $8.9 million on an interim basis (the "Interim Cap") and $9 million on a final basis (the "Final Cap," and, together with the Interim Cap, the "Trade Claim Cap").[6] To be clear, the Debtors are not seeking to pay all pre-petition claims of Trade Claimants, but rather to pay certain critical undisputed amounts in the ordinary course of the Debtors' businesses.

---

[6] These amounts are based upon pre-petition balances in the Debtors' accounts payable system as of the Petition Date. Certain adjustments and reconciliations will be necessary to account for those invoices which have been issued by certain vendors but not yet received by the Debtors at the time of the filing of this Motion.

23.     To minimize the amount of payments required, the Debtors propose that the Interim

Order and Final Order authorize the Debtors to condition payment of all or a portion of the Trade

Claims upon each Trade Claimant's agreement to continue supplying merchandise and/or services

in accordance with certain procedures, generally as follows:

(a)     The Debtors, in their sole discretion, may require Trade Claimants to enter into an agreement (each, a "<u>Vendor Agreement</u>"), in substantially in the form attached hereto as **<u>Exhibit 1</u>**, as a condition to paying a Trade Claim.

(b)     The Debtors may, in their sole discretion, condition payment of a Trade Claim on an agreement from a Trade Claimant to continue to supply merchandise or services to the Debtors during these chapter 11 cases on the normal and customary trade terms, practices, and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs), that were most favorable to the Debtors and in effect between a Trade Claimant and the Debtors in the twelve months prior to the Petition Date (the "<u>Customary Trade Terms</u>").

(c)     As a condition to payment of any Trade Claim, the Debtors reserve the right to negotiate trade terms that vary from the Customary Trade Terms in effect with a particular Trade Claimant during the pre-petition period (such negotiated terms, the "<u>Negotiated Trade Terms</u>") to the extent the Debtors determine that such terms are necessary to procure essential merchandise or services or are otherwise in the best interests of their estates.

(d)     The Debtors may obtain written verification of the Customary Trade Terms or the Negotiated Trade Terms from a Trade Claimant before issuing payment hereunder.

(e)     The Debtors may obtain from a Trade Claimant such vendor's agreement not to file or otherwise assert against any of the Debtors, their estates, or their assets or property (real or personal) any lien (a "<u>Lien</u>") (regardless of the statute or other legal authority upon which such Lien is asserted) related in any way to any remaining pre-petition amounts allegedly owed to the Trade Claimant by the Debtors arising from agreements entered into or from merchandise and/or services provided to the Debtors prior to the Petition Date.  To the extent a Trade Claimant has previously obtained such a Lien, the Debtors may demand that such Trade Claimant immediately take all necessary actions to release such Lien.

(f)     The Debtors may require a Trade Claimant to acknowledge that it has reviewed the terms and provisions of the interim or final order, as applicable, and consents to be bound thereby.

(g)    The Debtors may require a Trade Claimant to agree that it will not separately assert or otherwise seek payment of any reclamation claims.

(h)    The Debtors may require a Trade Claimant to agree that it has received payment of a pre-petition claim.

(i)    The Debtors may require a Trade Claimant to acknowledge that, if it subsequently refuses to supply merchandise and/or services to the Debtors on Customary Trade Terms, the Debtors reserve all rights to recover sums paid in excess of post-petition obligations in the event a Trade Agreement is terminated.

24.    The Debtors further propose that if a Trade Claimant later refuses to continue to provide services to the Debtors on the Customary or Negotiated Trade Terms, then the Debtors may (a) take any and all appropriate steps to recover from such Trade Claimant any payments made to it on account of its prepetition claim to the extent that such payments exceed the postpetition amounts then owing to such party, (b) upon recovery by the Debtors, any prepetition claims of such party shall be reinstated as if the payment on account thereof had not been made, and (c) if an outstanding balance is due from the Debtors to such party, (i) the Debtors may elect to recharacterize and apply any payment made pursuant to the relief requested by this Motion to such outstanding postpetition balance, and (ii) such party will be required to repay to the Debtors such paid amount that exceeds the postpetition obligations then outstanding without the right of any setoffs, claims, provisions for payment of any claims, or otherwise.  In short, the Debtors will return the parties to their positions immediately prior to the entry of any order approving the relief sought herein.

25.    The Debtors believe that payment of some or all Trade Claims will be necessary to preserve the integrity of the Debtors' supply chain, facilitate the sale of the Debtors' inventory and allow the Debtors to efficiently administer these chapter 11 cases.  During this period, it is imperative that the Debtors remain focused and avoid distractions from vendors attempting to assert leverage or deny provision of merchandise and services going forward, suddenly and

without notice, which could destroy value that would otherwise inure to the benefit of the Debtors'
estates or otherwise jeopardize the Debtors' sale efforts.

## Basis for Relief

### I.    The Court Should Authorize the Payment of Critical Vendor Claims

26.    The Court has authority pursuant to sections 105(a), 363(b), and 503(b) of the
Bankruptcy Code to grant the relief requested by the Debtors.  Section 503(b)(1) of the Bankruptcy
Code provides that:

> After notice and a hearing, there shall be allowed, administrative
> expenses . . . including . . . the actual, necessary costs and expenses
> of preserving the estate . . . .

11 U.S.C. § 503(b)(1)(A).  The Court, therefore, can authorize the Debtors to use estate funds to
pay any Trade Claims arising or relating to the period after the Petition Date.

27.    The Court may also grant the relief requested herein with respect to pre-petition
obligations pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.  Section 363(b)(1) of
the Bankruptcy Code provides, in relevant part, that, "[t]he [debtors], after notice and a hearing,
may use, sell, or lease, other than in the ordinary course of business, property of the estate."
11 U.S.C. § 363(b)(1).  This provision grants a court broad flexibility to authorize a debtor to pay
pre-petition claims where a sound business purposes exists.  *See In re Ionosphere Clubs, Inc.*, 98
B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

28.    Further, section 105(a) provides, in relevant part, that, "[t]he court may issue any
order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."
11 U.S.C. §105(a).  This provision codifies the inherent equitable powers of the bankruptcy court,
including the power to authorize payment of pre-petition claims, under what is known as the
"doctrine of necessity" or the "necessity of payment" doctrine, when such payment is critical to a
debtor's reorganization or necessary for the preservation of the value of the debtor's estate.

65783/0001-45032473

*See, e.g., In re Lehigh & N. E. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (stating that "the sine qua non for the application of the 'necessity of payment' doctrine is the possibility that the creditor will employ an immediate economic sanction failing such payment.  In such a circumstance, it is evident that the payment made under the 'necessity of payment' rule is in the interest of all parties . . . because such payment will facilitate the [debtors'] continued operation"); *In re Penn Cent. Transp. Co.*, 467 F.2d 100, 102, n.1 (3d Cir. 1972) (citations omitted) ("A number of cases declare a so-called 'necessity of payment' exception to the normal deferment of the payment of pre[-]reorganization claims until their disposition can be made part of a plan of reorganization.  These cases permit immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid."); *In re Motor Coach Indus. Int'l, Inc.*, No. 08-12136-BLS, 2009 WL 330993, at *2, n.5 (D. Del. Feb. 10, 2009) (citing *Lehigh*, *inter alia*¸ for the proposition that "[t]he 'doctrine of necessity' or 'necessity of payment' doctrine is a general rubric for the proposition that a court can authorize the payment of prepetition claims if such payment is essential to the continued operation of the debtor"); *see also In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (stating "it is only logical that the bankruptcy court be able to use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate").

29.     The payment of pre-petition claims under the doctrine of necessity is consistent with the "two recognized policies" of chapter 11 of the Bankruptcy Code: preserving going concern value and maximizing property available to satisfy creditors.  *See Bank of Am. Nat'l Trust & Savs. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 453 (1999).  It is consistent with Bankruptcy Rule 6003, which implies that the payment of pre-petition obligations may be

65783/0001-45032473

permissible within the first twenty-one days of a case where doing so is "necessary to avoid immediate and irreparable harm."

30.     The relief requested by this Motion represents a sound exercise of the Debtors' business judgment, is necessary to avoid immediate and irreparable harm to the Debtors' estates and is justified under sections 105(a) and 363(b) of the Bankruptcy Code.  As noted herein, the Debtors have sound business reasons for seeking authority to pay the Critical Vendor Claims.  It is the Debtors' business judgment that the failure to pay the Critical Vendor Claims would likely have a material adverse impact on the Debtors' efforts to monetize their assets and maximize the value of their estates.  Absent the requested payments, the value of the Debtors' estates will suffer significant, immediate, and possibly irreparable harm.  Accordingly, the Debtors submit that it is appropriate for the Court to authorize the Debtors to engage in discussions with counterparties that qualify as Critical Vendors regarding the validity and amount of their respective claims and to determine whether any such counterparties qualify as Critical Vendors and, subject to entry of the Final Order, for the Court to authorize the Debtors to satisfy the Critical Vendor Claims as set forth herein.

**II.     Failure to Make Timely Payment of the Lien Claims Would Threaten the Debtors' Ability to Operate**

31.     As noted above, certain Lien Claimants may be entitled under applicable non-bankruptcy law to assert certain possessory liens on the Debtors' goods or equipment in their possession (notwithstanding the automatic stay under section 362 of the Bankruptcy Code) in an attempt to secure payment of their prepetition claim.  Under section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, is expressly excluded from the automatic stay.  As a result, the Debtors anticipate that certain Lien Claimants may assert or prefect liens, simply refuse to turn over goods

in their possession, or stop performing their ongoing obligations.  Even absent a valid lien, to the
extent certain Lien Claimants have possession of the Debtors' inventory, equipment or products,
mere possession or retention could disrupt the Debtors' operations.

32.     Furthermore, paying the Lien Claims should not impair unsecured creditor
recoveries in these chapter 11 cases.  In instances where the amount owed to a Lien Claimant is
less than the value of the goods that could be held to secure a Lien Claimant's claim, such party
may be a fully secured creditor of the Debtors' estates.  In such instances, payment now only
provides such party with what they may be entitled to under a chapter 11 plan, without any interest
costs that might accrue during these chapter 11 cases.  Conversely, all creditors will benefit from
the seamless transition of the Debtors' operations into bankruptcy and the ultimate delivery and
sale of inventory in the Debtors' stores.

**Reservation of Rights**

33.     Nothing contained herein is intended to be or shall be construed as (i) an admission
as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any appropriate
party in interest's rights to dispute any claim, or (iii) an approval or assumption of any agreement,
contract, program, policy, or lease under section 365 of the Bankruptcy Code.  Likewise, if the
Court grants the relief sought herein, any payment made pursuant to the Court's order is not
intended to be and should not be construed as an admission to the validity of any claim or a waiver
of the Debtors' rights to dispute such claim subsequently.

**Processing of Checks and Electronic Fund Transfers Should be Authorized**

34.     The Debtors have sufficient funds to pay the amounts described in this Motion in
the ordinary course of business by virtue of expected cash flows from ongoing business operations
and anticipated access to debtor in possession financing.  In addition, under the Debtors' existing
cash management system, the Debtors can readily identify checks or wire transfer requests as

relating to any authorized payment in respect of the relief requested herein. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this Motion.

### The Requirements of Bankruptcy Rule 6003 are Satisfied

35.     Bankruptcy Rule 6003 empowers a court to grant certain relief within the first twenty-one (21) days after the petition date only "to the extent that relief is necessary to avoid immediate and irreparable harm." For the reasons discussed above, the Debtors believe an immediate and orderly transition into chapter 11 is critical to the viability of their operations, and the failure to receive the requested relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this important juncture. The requested relief is necessary for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of their operations during the sale process, and maximize the value of their estates for the benefit of all stakeholders. The Debtors submit that the requested relief is "necessary to avoid immediate and irreparable harm," as contemplated by Bankruptcy Rule 6003, and request that the Court grant the requested relief.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

36.     To implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) for the reasons set forth herein.

65783/0001-45032473

## Waiver of Memorandum of Law

37.    The Debtors respectfully request that the Court waive the requirement to file a separate memorandum of law pursuant to Local Rule 9013-1(a)(3) because the legal basis upon which the Debtors rely is set forth herein and the Motion does not raise any novel issues of law.

## Reservation of Rights

38.    Nothing contained in this Motion or any order granting the relief requested in this Motion, and no action taken pursuant to the relief requested or granted (including any payment made in accordance with any such order), is intended as or shall be construed or deemed to be: (a) an admission as to the amount of, basis for, or validity of any claim against the Debtors under the Bankruptcy Code or other applicable nonbankruptcy law; (b) a waiver of the Debtors' or any other party in interest's right to dispute any claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication, admission, or finding that any particular claim is an administrative expense claim, other priority claim, or otherwise of a type specified or defined in this Motion or any order granting the relief requested by this Motion; (e) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (g) a waiver or limitation of any claims, causes of action, or other rights of the Debtors or any other party in interest against any person or entity under the Bankruptcy Code or any other applicable law.  If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

65783/0001-45032473

## Notice

39.     The Debtors will provide notice of this Motion to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the District of New Jersey; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel for Bank of America, N.A., in its capacity as the ABL Agent and DIP Agent, (i) Morgan, Lewis & Bockius LLP, Matthew Furlong, Esq. and Christopher L. Carter, Esq., and (ii) Greenberg Traurig, LLP, Alan Brody, Esq.; (d) counsel for 1903P Loan Agent, LLC, in its capacity as First In Last Out Agent, (i) Riemer & Braunstein LLP, Steven E. Fox, Esq. and Brendan C. Recupero, Esq., and (ii) Lowenstein Sandler LLP, Kenneth A. Rosen, Esq.; (e) counsel for CPPIB Credit Investments III Inc. and its affiliates and managed accounts, in their capacity as lenders under the Prepetition Senior Superpriority Term Loan Agreement, Weil, Gotshal & Manges LLP, Matt Barr, Esq., Matthew P. Goren, Esq. and F. Gavin Andrews, Esq.; (f) the United States Attorney's Office for the District of New Jersey; (g) the Internal Revenue Service; (h) the offices of the attorneys general for the states in which the Debtors operate; and (i) the National Association of Attorneys General. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## No Prior Request

40.     No prior request for the relief sought in this Motion has been made to this or any other court.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** respectively, (a) granting the relief requested herein and (b) granting such other relief as is just and proper.

DATED:  April 17, 2023                    Respectfully submitted,

**COLE SCHOTZ P.C.**

By: ___*/s/Michael D. Sirota*___
       Michael D. Sirota, Esq.
       Felice R. Yudkin, Esq.
       Rebecca W. Hollander, Esq.
       Court Plaza North
       25 Main Street
       Hackensack, NJ 07601
       (201) 489-3000
       (201) 489-1536 Facsimile
       Email: msirota@coleschotz.com
            fyudkin@coleschotz.com
            rhollander@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
       Joshua A. Sussberg, P.C.
       Christopher T. Greco, P.C.
       Rachael M. Bentley, Esq.
       (pro hac vice pending)
       601 Lexington Avenue
       New York, New York 10022
       (212) 446-4800
       (212) 446-4900 Facsimile
       Email: joshua.sussberg@kirkland.com
            christopher.greco@kirkland.com
            rachael.bentley@kirkland.com
*-and-*
       Alexandra Schwarzman, Esq.
       (pro hac vice pending)
       300 North LaSalle Street
       Chicago, Illinois 60654
       (312) 862-2000
       (312) 862-2200 Facsimile
       Email: alexandra.schwarzman@kirkland.com

       *Proposed Counsel to Debtors*

# **EXHIBIT A**

## **Proposed Interim Order**

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>DISTRICT OF NEW JERSEY | |
| Caption in Compliance with D.N.J. LBR 9004-2(c)<br>**COLE SCHOTZ P.C.**<br>Court Plaza North<br>25 Main Street<br>P.O. Box 800<br>Hackensack, New Jersey 07602-0800<br>(201) 489-3000<br>(201) 489-1536 Facsimile<br>Michael D. Sirota, Esq.<br>msirota@coleschotz.com<br>Felice R. Yudkin, Esq.<br>fyudkin@coleschotz.com<br>Rebecca W. Hollander, Esq.<br>rhollander@coleschotz.com<br><br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>601 Lexington Avenue<br>New York, New York 10022<br>(212) 446-4800<br>(212) 446-4900 Facsimile<br>Joshua A. Sussberg, P.C. (*pro hac vice* pending)<br>joshua.sussberg@kirkland.com<br>Christopher T. Greco, P.C. (*pro hac vice* pending)<br>christopher.greco@kirkland.com<br>Rachael M. Bentley (*pro hac vice* pending)<br>rachael.bentley@kirkland.com<br>*-and-*<br>**KIRKLAND & ELLIS LLP**<br>**KIRKLAND & ELLIS INTERNATIONAL LLP**<br>300 North LaSalle Street<br>Chicago, Illinois 60654<br>(312) 862-2000<br>(312) 862-2200 Facsimile<br>Alexandra Schwarzman, P.C. (*pro hac vice* pending)<br>alexandra.schwarzman@kirkland.com<br><br>*Proposed Counsel to Debtors* | |
| In re:<br><br>DAVID'S BRIDAL, LLC, *et al.*,<br><br>               Debtors. [1] | Chapter 11<br><br>Case No. Case No. 23-_____ (___)<br><br>Judge: _____<br><br>(Joint Administration Requested) |

[1]   The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI

Page (2)
Debtor:             DAVID'S BRIDAL, LLC, *et al.*
Case No.:           23-_____ (_____)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                    PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                    CLAIMANTS AND (II) GRANTING RELATED RELIEF

### INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO PAY OR HONOR PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN CLAIMANTS AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through nine (9), is hereby ORDERED.

---

Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); and Blueprint Registry, LLC (2335). The location of debtor David's Bridal, LLC's principal place of business and the debtors' service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

Page (3)
Debtor:              DAVID'S BRIDAL, LLC, *et al.*
Case No.:            23-_____ (_____)
Caption of Order:    INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                     PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                     CLAIMANTS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing the Debtors to pay or honor prepetition claims of (a) Critical Vendors, and (b) Lien Claimants and (ii) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012 (Simandle, C.J.); and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the interim relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the interim relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the interim relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Page (4)
Debtor:             DAVID'S BRIDAL, LLC, *et al.*
Case No.:           23-_____ (_____)
Caption of Order:   INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                    PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                    CLAIMANTS AND (II) GRANTING RELATED RELIEF

1.      The Motion is **GRANTED** on an interim basis as set forth in this Interim Order.

2.      The final hearing (the "Final Hearing") on the Motion shall be held on _____,

**2023, at__:__ _.m., prevailing Eastern Time**.  Any objections or responses to entry of a final

order on the Motion shall be filed **on or before 4:00 p.m., prevailing Eastern Time, on**

**_____, 2023**.  Any objection shall set forth in writing and with particularity the factual and

legal basis of the objection.  If no objections are filed to the Motion, the Court may enter an order

approving the relief requested in the Motion on a final basis without further notice or hearing.

3.      The Debtors are authorized, but not directed, in the reasonable exercise of their

business judgment pursuant to sections 105(a), 363, and 503(b) of the Bankruptcy Code, to pay

some or all of the Trade Claims; *provided* that the Debtors' payment of Trade Claims shall not

exceed $8.9 million (the "Interim Cap") from the date of this Interim Order until such time as a

final order is entered granting the requested relief, unless otherwise ordered by the Court.  To the

extent the Debtors do not exhaust the Interim Cap prior to the Final Hearing, parties in interest

may challenge the Debtors' right to use the unspent portion of the Interim Cap at the Final Hearing.

4.      As a condition to payment of any Trade Claimant, the Debtors are authorized to

negotiate trade terms with any Trade Claimant that vary from the Customary Trade Terms (the

"Negotiated Trade Terms") to the extent the Debtors determine that such terms are necessary to

procure essential merchandise or services or are otherwise in the best interests of the Debtors'

estate.

Page (5)
Debtor:              DAVID'S BRIDAL, LLC, *et al.*
Case No.:            23-_____ (_____)
Caption of Order:    INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                     PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                     CLAIMANTS AND (II) GRANTING RELATED RELIEF

5.      A Trade Vendor's acceptance of payment is deemed to be acceptance of the terms
of this Order, and if the Critical Vendor thereafter does not provide the Debtors with Customary
Trade Terms or Negotiated Trade Terms during these chapter 11 cases, then any payments of pre-
petition claims made after the Petition Date may be deemed to be unauthorized post-petition
transfers and recoverable by the Debtors in these chapter 11 cases.

6.      The Debtors, in their sole discretion, may require Trade Claimants to enter into an
agreement (the "Vendor Agreement"), substantially in the form attached to the Motion as
**Exhibit 1**, as a condition to paying a Trade Claim.

7.      If the Debtors, in their sole discretion, determine that a Trade Claimant has not
complied with the terms and provisions of a Vendor Agreement or has failed to continue to provide
Customary or Negotiated Trade Terms, the Debtors may terminate such Vendor Agreement or
other undocumented arrangement, together with the other benefits to the Trade Claimant as
contained in this Interim Order, *provided*, *however*, that such agreement may be reinstated if
(a) such determination is subsequently reversed by the Court for good cause after it is shown that
the determination was materially incorrect after notice and a hearing following a motion from the
Trade Claimant, (b) the underlying default under the Vendor Agreement is fully cured by the Trade
Claimant not later than five (5) business days after the date the initial default occurred, or (c) the
Debtors, in their sole discretion, reaches a subsequent agreement with the Trade Claimant.

Page (6)
Debtor:                      DAVID'S BRIDAL, LLC, *et al.*
Case No.:                    23-_____ (_____)
Caption of Order:            INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                             PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                             CLAIMANTS AND (II) GRANTING RELATED RELIEF

8.      If a Vendor Agreement is terminated as set forth above, or if a Trade Claimant that has received payment of a pre-petition claim later refuses to continue to supply merchandise or services for the applicable period in compliance with the Vendor Agreement, Customary or Negotiated Trade Terms, or this Interim Order, then (i) the Debtors may declare that the payment of the creditor's Critical Vendor Claim is a voidable post-petition transfer pursuant to Bankruptcy Code section 549(a) that the Debtors may recover in cash or in goods from such Trade Claimant, (ii) Debtors may then take any and all appropriate steps to cause such Trade Claimant to return such payment in respect of a Trade Claim to the extent that the aggregate amount of such payment exceeds the post-petition obligations then outstanding, and (iii) the creditor's Trade Claim shall be reinstated in such an amount so as to restore the Debtors and the Trade Claimant to their original positions as if the Vendor Agreement had never been entered into and no payment of such Trade Claim had been made.

9.      As a further condition of receiving payment on a Trade Claim, the Debtors are authorized, in their sole discretion, to require that such Trade Claimant agree to take whatever action is necessary to remove any trade liens at such Trade Claimant's sole cost and expense and waive any right to assert a trade lien on account of the paid Trade Claim.

10.     In accordance with this Interim Order (or other order of this Court), each of the financial institutions at which the Debtors maintain its accounts relating to the payment of the obligations described in the Motion is authorized and directed to (i) receive, process, honor, and

Page (7)
Debtor:              DAVID'S BRIDAL, LLC, *et al.*
Case No.:            23-_____ (_____)
Caption of Order:    INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                     PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                     CLAIMANTS AND (II) GRANTING RELATED RELIEF

pay all checks presented for payment and to honor all fund transfer requests made by the Debtors

related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept

and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or

automated clearing house transfers should be honored or dishonored in accordance with this or

any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on

or subsequent to the Petition Date, without any duty to inquire otherwise.

11.    Nothing contained in the Motion or this Interim Order or any payment made

pursuant to the authority granted by this Interim Order is intended to be or shall be construed as

(i) an admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or

any appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of

any agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

12.    Notwithstanding entry of this Interim Order, nothing herein shall create, nor is

intended to create, any rights in favor of or enhance the status of any claim held by any party.

13.    Notwithstanding anything to the contrary herein, nothing in this Interim Order

authorizes the use of cash collateral, and any payments authorized to be made pursuant to this

Interim Order shall be subject to the terms of any orders authorizing the issuance of debtor-in-

possession financing and/or use of cash collateral entered by this Court in these chapter 11 cases.

14.    Notwithstanding anything to the contrary in this Interim Order, the Motion, or the

Vendor Agreement, the priority status of a creditor's claim shall not be affected by whether such

Page (8)
Debtor:                   DAVID'S BRIDAL, LLC, *et al.*
Case No.:                 23-_____ (_____)
Caption of Order:         INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                          PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                          CLAIMANTS AND (II) GRANTING RELATED RELIEF

creditor executes a Vendor Agreement or provides Merchandise or services to the Debtors under

Customary or Negotiated Trade Terms.

15.     Upon the Debtors' payment of any Lien Claim, any lien securing same shall be

immediately released, void, and of no further force and effect, without further action by the

Debtors.

16.     Irrespective of whether the Debtors and a Critical Vendor enter into a Vendor

Agreement, in the event a Critical Vendor who receives a critical vendor payment thereafter

refuses to supply goods on customary trade terms, the Debtors may then take any and all

appropriate steps to cause such Critical Vendor to repay payments made to it on account of its pre-

petition Trade Claim to the extent that such payments exceed the post-petition amounts then owing

to such Critical Vendor.

17.     Notwithstanding anything to the contrary in the Motion or this Interim Order, any

payment made or authorization hereunder shall be subject to the applicable budget and/or cash

collateral authorization requirements imposed on the Debtors under any order(s) of this Court

authorizing the Debtors' use of cash collateral and post-petition debtor-in-possession financing

facilities, including any order(s) authorizing post-petition financing.

18.     The requirements of Bankruptcy Rule 6003(b) have been satisfied.

19.     The requirements of Bankruptcy Rule 6004(a) are waived.

Page (9)
Debtor:              DAVID'S BRIDAL, LLC, *et al.*
Case No.:            23-_____ (_____)
Caption of Order:    INTERIM ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                     PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                     CLAIMANTS AND (II) GRANTING RELATED RELIEF

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim

Order shall be immediately effective and enforceable upon its entry.

21.     This Interim Order is effective only from the date of entry through this Court's

disposition of the Motion on a final basis; <u>provided</u> that the Court's ultimate disposition of the

Motion on a final basis shall not impair or otherwise affect any action taken pursuant to this Interim

Order.

22.     Any party in interest may move for modification of this Order in accordance with

D.N.J. LBR 9013-5(e).

23.     A true copy of this Order shall be served on all required parties pursuant to D.N.J.

LBR 9013-5(f).

24.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be

accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Motion

or otherwise waived.

25.     The Debtors are authorized to take all action necessary to carry out this Interim

Order.

# **EXHIBIT B**

## **Proposed Final Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
msirota@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
(212) 446-4900 Facsimile
Joshua A. Sussberg, P.C. (*pro hac vice* pending)
joshua.sussberg@kirkland.com
Christopher T. Greco, P.C. (*pro hac vice* pending)
christopher.greco@kirkland.com
Rachael M. Bentley (*pro hac vice* pending)
rachael.bentley@kirkland.com
*-and-*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
(312) 862-2200 Facsimile
Alexandra Schwarzman, P.C. (*pro hac vice* pending)
alexandra.schwarzman@kirkland.com

*Proposed Counsel to Debtors*

| | |
|---|---|
| In re:<br><br>DAVID'S BRIDAL, LLC, *et al.*,<br><br>Debtors. [1] | Chapter 11<br><br>Case No. Case No. 23-_____ (___)<br><br>Judge: _____<br><br>(Joint Administration Requested) |

---

[1]    The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI

Page (2)
Debtor:                    DAVID'S BRIDAL, LLC, *et al.*
Case No.:                  23-_____ (_____)
Caption of Order:          FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                           PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                           CLAIMANTS AND (II) GRANTING RELATED RELIEF

### FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN CLAIMANTS AND (II) GRANTING RELATED RELIEF

The relief set forth on the following pages, numbered three (3) through nine (9), is hereby ORDERED.

---

Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); and Blueprint Registry, LLC (2335).  The location of debtor David's Bridal, LLC's principal place of business and the debtors' service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

Page (3)
Debtor:                         DAVID'S BRIDAL, LLC, *et al.*
Case No.:                       23-_____ (_____)
Caption of Order:               FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                                PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                                CLAIMANTS AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession

(collectively, the "Debtors") for entry of a final order (this "Final Order") (i) authorizing the

Debtors to pay or honor prepetition claims of (a) Critical Vendors and (b) Lien Claimants, and (ii)

granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration;

and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

*Standing Order of Reference to the Bankruptcy Court Under Title 11* of the United States District

Court for the District of New Jersey, entered July 23, 1984, and amended on September 18, 2012

(Simandle, C.J.); and this Court having found that this is a core proceeding pursuant to 28 U.S.C.

§ 157(b)(2); and the Court having held hearings to consider the relief requested in the Motion on

an interim (the "Interim Hearing") and final basis (the "Final Hearing"), and the Court having

entered an order granting the relief requested in the Motion on an interim basis; and that this Court

may enter a final order consistent with Article III of the United States Constitution; and this Court

having found that venue of this proceeding and the Motion in this district is proper pursuant to

28 U.S.C. §§ 1408 and 1409; and this Court having found that the relief requested in the Motion

is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this

Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the

Motion were appropriate and no other notice need be provided; and this Court having reviewed

the Motion and having heard the statements in support of the relief requested therein at a hearing

---

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Page (4)
Debtor:                    DAVID'S BRIDAL, LLC, *et al.*
Case No.:                  23-_____ (_____)
Caption of Order:          FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                           PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                           CLAIMANTS AND (II) GRANTING RELATED RELIEF

before this Court (the "Hearing"); and this Court having determined that the legal and factual bases

set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and

upon all of the proceedings had before this Court; and after due deliberation and sufficient cause

appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED** on a final basis as set forth in this Final Order.

2.      The Debtors are authorized, but not directed, in the reasonable exercise of its

business judgment pursuant to sections 105(a), 363, and 503(b) of the Bankruptcy Code, to pay

some or all of the Trade Claims.

3.      The Debtors' payment of Trade Claims shall not exceed $9 million, unless

otherwise ordered by the Court.

4.      The Debtors are authorized but not directed to pay, in whole or in part, some or all

of the Critical Vendor Claims, in the Debtors' sole determination, in the ordinary course of its

business.

5.      As a condition to payment of any Trade Claimant, the Debtors are authorized to

negotiate trade terms with any Trade Claimant that vary from the Customary Trade Terms (the

"Negotiated Trade Terms") to the extent the Debtors determine that such terms are necessary to

procure essential merchandise or services or are otherwise in the best interests of the Debtors'

estates.  The Debtors shall promptly notify the Committee of Negotiated Trade Terms.

Page (5)
Debtor:                DAVID'S BRIDAL, LLC, *et al.*
Case No.:              23-_____ (_____)
Caption of Order:      FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                       PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                       CLAIMANTS AND (II) GRANTING RELATED RELIEF

6.      A Trade Claimant's acceptance of payment is deemed to be acceptance of the terms of this Order, and if the Trade Claimant thereafter does not provide the Debtors with Customary Trade Terms or Negotiated Trade Terms during these chapter 11 cases, then any payments of pre-petition claims made after the Petition Date may be deemed to be unauthorized post-petition transfers and recoverable by the Debtors in this chapter 11 case.

7.      The Debtors, in their sole discretion, may require Trade Claimants to enter into an agreement (the "Vendor Agreement"), substantially in the form attached to the Motion as **Exhibit 1**, as a condition to paying a Trade Claim.

8.      If the Debtors, in their sole discretion and after consultation with the Committee, determines that a Trade Claimant has not complied with the terms and provisions of a Vendor Agreement or has failed to continue to provide Customary or Negotiated Trade Terms, the Debtors may terminate such Vendor Agreement or other undocumented arrangement, together with the other benefits to the Trade Claimant as contained in this Final Order, provided, however, that such agreement may be reinstated if (a) such determination is subsequently reversed by the Court for good cause after it is shown that the determination was materially incorrect after notice and a hearing following a motion from the Trade Claimant, (b) the underlying default under the Vendor Agreement is fully cured by the Trade Claimant not later than five (5) business days after the date the initial default occurred, or (c) the Debtors, in their sole discretion, reaches a subsequent agreement with the Trade Claimant.

Page (6)
Debtor:              DAVID'S BRIDAL, LLC, *et al.*
Case No.:            23-_____ (_____)
Caption of Order:    FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                     PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                     CLAIMANTS AND (II) GRANTING RELATED RELIEF

9.      If a Vendor Agreement is terminated as set forth above, or if a Trade Claimant that has received payment of a pre-petition claim later refuses to continue to supply merchandise or services for the applicable period in compliance with the Vendor Agreement, Customary or Negotiated Trade Terms, or this Final Order, then (i) the Debtors may, in their sole discretion and upon notice to the Committee, declare that the payment of the creditor's Trade Claim is a voidable post-petition transfer pursuant to Bankruptcy Code section 549(a) that the Debtors may recover in cash or in goods from such Trade Claimant, (ii) Debtors may then take any and all appropriate steps to cause such Trade Claimant to return such payment in respect of a Trade Claim to the extent that the aggregate amount of such payment exceeds the post-petition obligations then outstanding, and (iii) the creditor's Trade Claim shall be reinstated in such an amount so as to restore the Debtors and the Trade Claimant to their original positions as if the Vendor Agreement had never been entered into and no payment of such Trade Claim had been made.

10.     If the Debtors intend to waive a preference claim in connection with its negotiations with a Trade Claimant, the Debtors shall provide the Committee with five (5) business days' notice and the Committee shall have three (3) business days thereafter to file an objection, which objection must state with specificity the grounds therefor and that the proposed waiver is not in the best interests of the estate or unsecured creditors.

11.     As a further condition of receiving payment on a Trade Claim, the Debtors are authorized, in its sole discretion, to require that such Trade Claimant agree to take whatever action

Page (7)
Debtor:                DAVID'S BRIDAL, LLC, *et al.*
Case No.:              23-_____ (_____)
Caption of Order:      FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                       PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                       CLAIMANTS AND (II) GRANTING RELATED RELIEF

is necessary to remove any trade liens at such Trade Claimant's sole cost and expense and waive

any right to assert a trade lien on account of the paid Trade Claim.

12.     In accordance with this Final Order (or other order of this Court), each of the

financial institutions at which the Debtors maintain its accounts relating to the payment of the

obligations described in the Motion is authorized and directed to (i) receive, process, honor, and

pay all checks presented for payment and to honor all fund transfer requests made by the Debtors

related thereto, to the extent that sufficient funds are on deposit in those accounts and (ii) accept

and rely on all representations made by the Debtors with respect to which checks, drafts, wires, or

automated clearing house transfers should be honored or dishonored in accordance with this or

any other order of this Court, whether such checks, drafts, wires, or transfers are dated prior to, on

or subsequent to the Petition Date, without any duty to inquire otherwise.

13.     Nothing contained in the Motion or this Final Order or any payment made pursuant

to the authority granted by this Final Order is intended to be or shall be construed as (i) an

admission as to the validity of any claim against the Debtors, (ii) a waiver of the Debtors' or any

appropriate party in interest's rights to dispute any claim, or (iii) an approval or assumption of any

agreement, contract, program, policy, or lease under section 365 of the Bankruptcy Code.

14.     Notwithstanding entry of this Final Order, nothing herein shall create, nor is

intended to create, any rights in favor of or enhance the status of any claim held by any party.

Page (8)
Debtor:                    DAVID'S BRIDAL, LLC, *et al.*
Case No.:                  23-_____ (_____)
Caption of Order:          FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                           PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                           CLAIMANTS AND (II) GRANTING RELATED RELIEF

15.    Notwithstanding anything to the contrary herein, nothing in this Final Order authorizes the use of cash collateral, and any payments authorized to be made pursuant to this Final Order shall be subject to the terms of any orders authorizing the issuance of debtor-in-possession financing and/or use of cash collateral entered by this Court in this chapter 11 case.

16.    Notwithstanding anything to the contrary in this Final Order, the Motion, or the Proposed Vendor Agreement, the priority status of a creditor's claim shall not be affected by whether such creditor executes a Vendor Agreement or provides merchandise or services to the Debtors under Customary or Negotiated Trade Terms.

17.    Irrespective of whether the Debtors and a Critical Vendor enter into a Vendor Agreement, in the event a Critical Vendor who receives a critical vendor payment thereafter refuses to supply goods on customary trade terms, the Debtors may then take any and all appropriate steps to cause such Critical Vendor to repay payments made to it on account of its pre-petition Trade Claim to the extent that such payments exceed the post-petition amounts then owing to such Critical Vendor.

18.    Notwithstanding anything to the contrary in the Motion, the Interim Order, or this Final Order, any payment made or authorization hereunder shall be subject to the applicable budget and/or cash collateral authorization requirements imposed on the Debtors under any order(s) of this Court authorizing the Debtors' use of cash collateral and post-petition debtor-in-possession financing facilities, including any order(s) authorizing post-petition financing.

Page (9)
Debtor:                    DAVID'S BRIDAL, LLC, *et al.*
Case No.:                  23-_____ (_____)
Caption of Order:          FINAL ORDER (I) AUTHORIZING DEBTORS TO PAY OR HONOR
                           PREPETITION CLAIMS OF (A) CRITICAL VENDORS AND (B) LIEN
                           CLAIMANTS AND (II) GRANTING RELATED RELIEF

19.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final

Order shall be immediately effective and enforceable upon its entry.

20.     The Debtors are authorized to take all action necessary to carry out this Final

Order.

21.     This Court shall retain jurisdiction to hear and determine all matters arising from

or related to the implementation, interpretation, and/or enforcement of this Final Order.

# EXHIBIT 1

**Proposed Vendor Agreement**

# [DAVID'S BRIDAL, LLC]

_____ __, 2023

TO:    [Critical Vendor]
       [Name]
       [Address]

Dear Valued Vendor:

As you are aware, [David's Bridal, LLC] (the "Company") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Case" and the "Bankruptcy Court," respectively) on _____ __, 2023 (the "Petition Date"). On the Petition Date, the Company requested the Bankruptcy Court's authority to pay the pre-petition claims of certain vendors in recognition of the importance of the Company's relationship with such parties and its desire that the Bankruptcy Case have as little effect on the Company's ongoing business operations as possible. On _____ __, 2023 the Bankruptcy Court entered an order (the "Order") authorizing the Company, under certain conditions, to pay the pre-petition claims of certain suppliers that agree to the terms set forth below and to be bound by the terms of the Order. A copy of the Order is enclosed.

In order to receive payment on account of pre-petition claims immediately, you must agree to continue to supply goods and services to the Company based on (i) "Customary Trade Terms" or (ii) such other trade terms as you and the Company agree to be bound by ("Negotiated Trade Terms"). Customary Trade Terms are defined as the normal and customary trade terms, practices, and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowances, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs), that were most favorable to the Company and in effect between you and the Company in the twelve months prior to the Petition Date.

For purposes of administration of this trade program as authorized by the Bankruptcy Court, [Vendor] and the Company both agree that:

1.      The estimated accrued balance of the pre-petition claim (net of any setoffs, credits, or discounts) that is due and owing is $_____ (the "Claim").

2.      The Company hereby agrees to pay $ _____ (the "Vendor Claim") on account of the Claim, subject to the terms and conditions set forth in this agreement. [It is understood that the remaining amount of your Claim shall be forever released and waived. If you have already filed a proof of claim with the Bankruptcy Court, you will take all necessary steps to withdraw the proof of claim.]

3.      Nothing herein waives the Company's or your rights under Bankruptcy Code section 365.

4.      You will provide [Customary Trade Terms or Negotiated Trade Terms] as follows: _____.

5.      You will not demand a lump sum payment upon consummation of a plan of reorganization in the Bankruptcy Case on account of any administrative expense priority claim that you assert, but instead agree that such claims will be paid in the ordinary course of business after consummation of a plan under applicable Customary or Negotiated Trade Terms, if the plan provides for the ongoing operations of the Company.

6.      Payment of your Vendor Claim in the manner set forth in the Order may only occur upon execution of this letter agreement by a duly authorized representative of your company and the return of this letter to the Company.  The undersigned, a duly authorized representative of [Vendor], has reviewed the terms and provisions of the Order and agrees that [Vendor] is bound by such terms.

7.      You will not separately seek payment for reclamation and similar claims outside of the terms of the Order unless your participation in the Vendor payment program authorized by the Order (the "Vendor Payment Program") is terminated.

8.      You will not file or otherwise assert against the Company, its estate, or any other person or entity or any of its assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining pre-petition amounts allegedly owed to you by the Company arising from agreements entered into or from goods and/or services provided to the Company prior to the Petition Date. Furthermore, you agree to take (at your own expense) all necessary steps to remove any such lien as soon as possible.

9.      If either (i) the Vendor Payment Program or your participation therein terminates as provided in the Order or (ii) you later refuse to continue to supply goods to the Company on Customary or Negotiated Trade Terms during the pendency of the Bankruptcy Case, any payments you receive on account of your Vendor Claim (including claims arising under Bankruptcy Code section 503(b)(9)) will be deemed voidable post-petition transfers pursuant to Bankruptcy Code section 549(a).  The Company may then take any and all appropriate steps to cause you to immediately repay any payments made to you on account of your Vendor Claim to the extent that the aggregate amount of such payments exceeds the post-petition obligations then outstanding. Your Vendor Claim shall be reinstated in such an amount so as to restore the Company and you to the same positions as would have existed if payment of the Vendor Claim had not been made

10.      Any dispute with respect to this letter agreement, the Order, and/or your participation in the Vendor Payment Program shall be determined by the Bankruptcy Court.

11.      You will keep the existence and the terms of this letter agreement confidential and will not disclose it to any person or entity without the prior written consent of the Company, other than as required by law to any court or governmental authority.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call.

Sincerely,

[David's Bridal, LLC]


By:_____
Name:

Title:


Agreed and Accepted by:

[Vendor]


By: _____
Name:

Title:

Dated: _____ __, 2023