| | |
|---|---|
| **COLE SCHOTZ P.C.** | **KIRKLAND & ELLIS LLP** |
| Court Plaza North | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| 25 Main Street | 601 Lexington Avenue |
| P.O. Box 800 | New York, New York 10022 |
| Hackensack, New Jersey 07602-0800 | (212) 446-4800 |
| (201) 489-3000 | (212) 446-4900 Facsimile |
| (201) 489-1536 Facsimile | Joshua A. Sussberg, P.C. (*pro hac vice* pending) |
| Michael D. Sirota, Esq. | joshua.sussberg@kirkland.com |
| msirota@coleschotz.com | Christopher T. Greco, P.C. (*pro hac vice* pending) |
| Felice R. Yudkin, Esq. | christopher.greco@kirkland.com |
| fyudkin@coleschotz.com | Rachael M. Bentley (*pro hac vice* pending) |
| Rebecca W. Hollander, Esq. | rachael.bentley@kirkland.com |
| rhollander@coleschotz.com | |
| | *-and-* |
| *Proposed Counsel to Debtors* | **KIRKLAND & ELLIS LLP** |
| | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| | 300 North LaSalle Street |
| | Chicago, Illinois 60654 |
| | (312) 862-2000 |
| | (312) 862-2200 Facsimile |
| | Alexandra Schwarzman, P.C. (*pro hac vice* pending) |
| | alexandra.schwarzman@kirkland.com |
| | |
| | *Proposed Counsel to Debtors* |

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, LLC, *et al.*, | Case No. 23-_____ (___) |
| Debtors.[1] | (Joint Administration Requested) |

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); and Blueprint Registry, LLC (2335). The location of debtor David's Bridal, LLC's principal place of business and the debtors' service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

65783/0001-45001319

**DECLARATION OF SURBHI GUPTA IN SUPPORT OF THE DEBTORS' MOTION FOR ENTRY OF ORDERS (I) (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS, (B) APPROVING THE FORM APA, (C) SCHEDULING AN AUCTION AND A SALE HEARING, (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (E) ESTABLISHING NOTICE AND PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES AND (II) (A) APPROVING THE ASSET PURCHASE AGREEMENT, (B) AUTHORIZING THE SALE OF ASSETS, AND (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS**

I, Surbhi Gupta, declare under penalty of perjury as follows.

**Introduction[2]**

1. I am a Managing Director of Houlihan Lokey Capital, Inc. ("Houlihan Lokey"), the proposed investment banker to the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). Houlihan Lokey was engaged in December of 2022 by the Debtors to serve as their investment banker to, among other things, lead the Debtors' sale and marketing process.

2. I have experience advising both debtors and creditors in financial restructurings, distressed mergers and acquisitions, raising capital for troubled companies, and representing creditor constituencies in bankruptcy proceedings.

3. Houlihan Lokey is an internationally recognized investment banking and financial advisory firm with thirty-eight locations worldwide and approximately 2,200 employees. It is one of the leading advisors and investment bankers to debtors, secured and unsecured creditors, acquirers, and other parties-in-interest in complex financial restructurings, both in and out of bankruptcy. Houlihan Lokey provides corporate finance, financial advisory, and financial

---

[2] All capitalized terms used but not otherwise defined herein shall have the same meanings set forth in the Motion.

restructuring services and has the largest worldwide financial restructuring practice of any investment bank. I joined Houlihan Lokey 18 years ago.

4. Since joining Houlihan Lokey I have provided restructuring advice within the context of chapter 11 restructurings, out-of-court restructurings, and distressed transactions, as well as advising both sellers and buyers in mergers and acquisitions and raising capital for troubled companies. I am a graduate of Swarthmore College and have an M.S. in Accounting and Finance from the London School of Economics. My recent engagements include Revlon, Inc., Tailored Brands, Inc., Neiman Marcus Group Ltd LLC, Nine West Holdings, Inc., Claire's Stores, Inc., Roust Corp., and Quiksilver, Inc., amongst others.

5. I submit this declaration (the "Declaration") in support of the relief requested in the *Debtors' Motion For Entry of Orders (I) (A) Approving Bidding Procedures and Bid Protections, (B) Approving the Form APA, (C) Scheduling an Auction and a Sale Hearing, (D) Approving the Form and Manner of Notice Thereof, and (E) Establishing Notice and Procedures for the Assumption and Assignment of the Assumed Contracts and Leases and (II) (A) Approving the Asset Purchase Agreement, (B) Authorizing the Sale of Assets, and (C) Authorizing the Assumption and Assignment of the Assumed Contracts*, filed contemporaneously herewith (the "Motion"). Except as otherwise indicated herein, all facts set forth in this Declaration are based upon my personal knowledge in consultation with other members of the Houlihan Lokey team, my discussions with other members of the Debtors' management team and the Debtors' advisors, my review of relevant documents and information concerning the Debtors' operations, financial affairs, prior restructuring initiatives, and/or my opinions based upon my experience and knowledge. If called as a witness, I could and would testify competently to the facts set forth in this Declaration. I am authorized by the Debtors to submit this Declaration on their behalf.

3

**The Prepetition Marketing Process**

6. On or about February 20, 2023, Houlihan Lokey initiated a comprehensive marketing process for a going-concern sale of some or all of the Debtors' Assets. Over the course of an approximately 60-day prepetition marketing process, the Debtors and Houlihan Lokey contacted in excess of 90 potentially interested parties, including various strategic and financial buyers. Each potential buyer received a teaser document or participated in high-level discussions about the transaction. Thirty-five of these parties entered into confidentiality agreements with the Debtors and were provided access to a virtual data room that included, among other things, a confidential information memorandum and the Debtors' go-forward business plan. Several parties participated in management meetings or calls.

7. The Debtors requested that initial indications of interest be submitted by March 31, 2023. Despite the accelerated pre-petition marketing efforts, the Debtors did not receive any offers to purchase their Assets before the Petition Date. The Debtors and Houlihan Lokey, however, are continuing their efforts to market the Assets (in whole or in part) and, if appropriate, enter into an agreement with a Stalking Horse Bidder.

8. Given the ongoing sale process and the expedited timeline of these chapter 11 cases, establishing Bidding Procedures at this juncture is in the best interests of the estates and allows the Debtors to achieve the highest or otherwise best outcome of the sale process. The Debtors are committed to achieving the highest or otherwise best bid for the Assets by continuing to market those assets pursuant to the Bidding Procedures, selecting a Stalking Horse Bidder, and, if necessary, conducting an Auction for the Assets of the Debtors.

**The Bidding Procedures and Sale Timeline Are Appropriate**

9. The Debtors intend to continue the marketing process for 45 days post-petition. As noted in the Motion, the Debtors are pursuing a dual track in these chapter 11 cases whereby the

Debtors are pursuing a going concern sale of their business or the sale of discrete assets, whichever maximizes the return for the Debtors' stakeholders, while contemporaneously pursuing sales in their retail locations with increasing discounts in order to monetize inventory. The timeline set forth in the proposed Bidding Procedures was calculated to balance the need to provide adequate notice to parties in interest and Potential Bidders with the need to run a fast and efficient sale process in accordance with the sale milestones set forth in the DIP Credit Agreement. The proposed Bidding Procedures are designed to encourage prospective bidders to submit competitive bids and to generate the highest or otherwise best available recoveries to the Debtors' stakeholders. Based on my experience, I believe that the proposed Bidding Procedures are in the best interests of the Debtors' estates, will establish whether and to what extent any market for some or all of the Assets exists, provide interested parties with sufficient opportunity to participate, and comply with the terms set forth in the DIP Credit Agreement.

10. As more fully described in the Motion, the proposed Bidding Procedures contain provisions relating to, among other things: (a) requirements to participate in the Bidding Procedures; (b) access to due diligence by Acceptable Bidders; (c) Qualified Bid Requirements; (d) the evaluation of Qualified Bids by the Debtors; (e) Bid Protections for one or more Stalking Horse Bidders (if any); (f) an Auction; (g) the acceptance of any Successful Bids; and (h) the designation of any Back-Up Bidders.

11. Based on my experience, I believe that the proposed Bidding Procedures are designed with the intent to enhance the value for all stakeholders by facilitating a competitive bidding process in which Potential Bidders are encouraged to participate and submit competing bids within the specified timeframe. The proposed Bidding Procedures provide time for the Debtors to complete their marketing process, receive and evaluate bids, and, if necessary, hold an

Auction to determine the highest or otherwise best bid. The proposed dates and deadlines are critical to driving the Debtors' sale efforts to an efficient conclusion. At the same time, the proposed Bidding Procedures seek to minimize the time and expense in chapter 11 and expediently capture value for the Debtors' Assets. The Bidding Procedures are designed to provide the Debtors with optionality in determining the best path forward on an expeditious timeline, thereby reducing administrative expenses and providing the highest or otherwise best available recoveries to the Debtors' stakeholders under the circumstances.

12. It is my view that the proposed Bidding Procedures are reasonable and appropriate under the circumstances. Under the proposed Bidding Procedures, the Debtors will have an opportunity to consider all offers and select the offer that they deem to be highest or otherwise best.

13. The Debtors' window to complete a sale transaction is rapidly closing. Any delay to the Auction or Sale Hearing would be detrimental to the Debtors' estates. As such, I believe the timeline presented herein is in the best interests of the Debtors' estates under the circumstances.

**There Is a Sound Business Purpose for the Bidding Procedures**

14. The Debtors and their advisors worked diligently to develop the Bidding Procedures. The Bidding Procedures are designed to ensure that a process is put in place that will maximize recoveries for creditors and other stakeholders. With these goals in mind, I believe that the Bidding Procedures set forth an appropriate process and timeline to test the value of the Assets, including the potential selection of a Stalking Horse Bidder. The fairness and reasonableness of the consideration to be paid by the Successful Bidder for the Assets ultimately will be demonstrated by further market exposure and an open and fair Auction.

15. During the Debtors' prepetition marketing process, relevant information regarding the Debtors' business was made available in the data room, allowing Potential Bidders to conduct

diligence on the Debtors' business, and the Debtors and their advisors began marketing the assets prior to the commencement of these chapter 11 cases. To the extent that any Potential Bidder has not previously conducted such diligence, such Potential Bidder will have access to the information regarding the Debtors' Assets contained in the data room, subject to the execution of an appropriate confidentiality agreement.

16. Moreover, Houlihan Lokey is continuing to market the Debtors' Assets post-petition. Houlihan Lokey has already reengaged with many of the over 90 potentially interested parties that were originally contacted and will continue to reach out to additional parties to generate interest in the postpetition marketing process. Additionally, given the public nature of the Debtors' chapter 11 cases, it is now well-publicized that the business is available for acquisition.

17. As such, I believe the Bidding Procedures: (a) provide adequate time for interested parties to conduct due diligence and construct and submit informed competing bids; (b) help ensure that the Debtors are maximizing the value of the estates while working towards the efficient completion of the chapter 11 cases in a timely manner;(c) satisfy the sale milestones imposed by the DIP Credit Agreement; and (d) provide the Debtors' sale process with finality.

**There Is a Sound Business Purpose for Appointing a Stalking Horse Bidder and Offering Bid Protections**

18. Given the status of the Debtors' sale process, it is critical that they be able to appoint a Stalking Horse Bidder in advance of the Auction. Such an appointment will be sought on notice to all parties to these chapter 11 cases so that no party will be prejudiced by the appointment of a Stalking Horse Bidder. In the event the Debtors seek to appoint one or more Stalking Horse Bidders, by way of the Motion, the Debtors seek authority to offer customary Bid Protections, including a Breakup Fee and Expense Reimbursement, to such Stalking Horse Bidder(s). The use of a stalking horse in a public auction process for the sale of a debtor's assets and providing certain

bid protections is customary and is beneficial to obtaining the highest value available under the circumstances for the Debtors' estates. I believe the ability to appoint a Stalking Horse Bidder and provide such bidder with the Bid Protections offers the Debtors the necessary flexibility to pursue a value-enhancing transaction. In my experience, bidding protections, such as breakup fees and expense reimbursements, are required by informed stalking horse bidders to invest the requisite time, money, and effort into diligence and entry into a binding agreement that sets a floor for other potential bidders in the process.

19. For these reasons, I believe the Debtors should act quickly to enter into an agreement with a Stalking Horse Bidder, should one emerge. In addition, I believe that starting the Auction with one or more Stalking Horse Bidders will benefit the Debtors' estates and enhance value by ensuring a minimum starting bid with respect to the covered Assets. Moreover, based on my experience, I believe that the Bid Protections will not serve their intended purpose in setting a bid floor on the Assets and encouraging competitive bidding if the Bid Protections are not approved in advance of the Auction.

20. The proposed Bid Protections, in my experience, are customary and market with bid protections that informed stalking horse bidders typically require. I believe the Debtors' proposed Bidding Procedures and timeline with respect to the proposed Bid Protections are appropriate under the circumstances.

21. Accordingly, for the reasons set forth herein, I believe the proposed Bidding Procedures are reasonable and appropriate in the context of these chapter 11 cases.

8

**Conclusion**

22.     Based on my experience and my personal knowledge of the Debtors' commercial circumstances, the prepetition marketing process and the milestones imposed by the DIP Credit Agreement, I believe that the Bidding Procedures will achieve the highest or otherwise best bid for the Assets and that the Bid Protections are necessary to induce a stalking horse bid for the Assets, which will ultimately maximize value to the Debtors' estates.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: April 17, 2023            */s/ Surbhi Gupta*
                                                   Surbhi Gupta
                                                   Managing Director
                                                   Houlihan Lokey Capital, Inc.