**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
msirota@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com

*Proposed Counsel to Debtors*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
(212) 446-4900 Facsimile
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
joshua.sussberg@kirkland.com
Christopher T. Greco, P.C. (admitted *pro hac vice*)
christopher.greco@kirkland.com
Rachael M. Bentley (admitted *pro hac vice*)
rachael.bentley@kirkland.com

*-and-*

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
(312) 862-2200 Facsimile
Alexandra Schwarzman, P.C. (admitted *pro hac vice*)
alexandra.schwarzman@kirkland.com

*Proposed Counsel to Debtors*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, LLC, *et al.*, | Case No. 23-13131 (CMG) |
| Debtors.[1] | (Jointly Administered) |

## DEBTORS' APPLICATION FOR ENTRY
## OF AN ORDER AUTHORIZING THE RETENTION
## AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND
## KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE
## DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); and Blueprint Registry, LLC (2335). The location of debtor David's Bridal, LLC's principal place of business and the debtors' service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428..

The above-captioned debtors and debtors in possession (collectively, the "Debtors") file this application (this "Application") for the entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date (as defined herein). In support of this Application, the Debtors submit the declaration of Christopher T. Greco, the president of Christopher T. Greco, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Greco Declaration"), which is attached hereto as **Exhibit B** and the declaration of James Marcum, the Chief Executive Officer of David's Bridal, LLC, which is attached hereto as **Exhibit C** (the "Marcum Declaration"). In further support of this Application, the Debtors respectfully state as follows.

## Jurisdiction and Venue

1.      The United States Bankruptcy Court for the District of New Jersey (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Debtors confirm their consent to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for the relief requested herein are sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules").

**Background**

4.      On April 17, 2023 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On April 17, 2023, the Court entered an order [Docket No. 69] authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b). No request for the appointment of a trustee or examiner has been made in these chapter 11 cases. On April 28, 2023, the United States Trustee for the District of New Jersey (the "U.S. Trustee") appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the "Committee") [Docket No. 150].

5.      A description of the Debtors' business, the reasons for commencing the chapter 11 cases, and the relief sought from the Court to allow for a smooth transition into chapter 11 are set forth in the *Declaration of James Marcum, Chief Executive Officer of the Debtors, in Support of Debtors' Chapter 11 Petitions and First Day Motions*, filed on April 17, 2023 [Docket No. 21], incorporated herein by reference.

**Relief Requested**

6.      By this Application, the Debtors seek entry of the Order authorizing the retention and employment of Kirkland as their attorneys in accordance with the terms and conditions set forth in that certain engagement letter between the Debtors and Kirkland effective as of October 29, 2022 (the "Engagement Letter"), a copy of which is attached hereto as **Exhibit 1** to the Order and incorporated herein by reference.[2]

---

[2]     The Debtors also seek to employ and retain Cole Schotz P.C. ("Cole Schotz") as co-counsel with Kirkland in connection with these chapter 11 cases. Kirkland will coordinate with Cole Schotz regarding their respective responsibilities in these chapter 11 cases to avoid any duplication of effort and provide services to the Debtors in the most efficient and cost-effective manner.

## Kirkland's Qualifications

7.      The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

8.      Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases in this district and in others in the Third Circuit, including, among others: *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Feb. 1, 2023); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re Riverbed Technology, Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 15, 2021); *In re Highpoint Resources Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 20, 2019).[3]

9.      In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland has become familiar with the Debtors' business and many of the potential legal issues that may arise in the context of these chapter 11 cases. The Debtors believe that Kirkland is both well-qualified and uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

## Services to be Provided

10.      Subject to further order of the Court, and consistent with the Engagement Letter, the Debtors request the retention and employment of Kirkland to render the following legal services:

---

[3]    Because of the voluminous nature of the orders cited in this Application, they are not attached to this Application. Copies of these orders are available upon request to Kirkland.

a.      advising the Debtors with respect to their powers and duties as debtors in possession in the continued management and operation of their businesses and properties;

b.      advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.      attending meetings and negotiating with representatives of creditors and other parties in interest;

d.      taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.      preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.      representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.      advising the Debtors in connection with any potential sale of assets;

h.      appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.      advising the Debtors regarding tax matters;

j.      taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.      performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

**Professional Compensation**

11.      Kirkland intends to apply for compensation for professional services rendered on

an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases,

subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy

Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of

the Court. The hourly rates and corresponding rate structure Kirkland will use in these chapter 11

cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other

restructuring matters, as well as similar complex corporate, securities, and litigation matters

whether in court or otherwise, regardless of whether a fee application is required. These rates and

the rate structure reflect that such restructuring and other complex matters typically are national in

scope and involve great complexity, high stakes, and severe time pressures.

12.     Kirkland operates in a national marketplace for legal services in which rates are

driven by multiple factors relating to the individual lawyer, his or her area of specialization, the

firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

13.     Kirkland's current hourly rates for matters related to these chapter 11 cases range

as follows:[4]

| Billing Category[5] | U.S. Range |
|---|---|
| Partners | $1,195-$2,245 |
| Of Counsel | $820-$2,125 |
| Associates | $685-$1,395 |
| Paraprofessionals | $295-$575 |

14.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for

the work of its attorneys and paraprofessionals and to cover fixed and routine expenses. Hourly

---

[4]     For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable
currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable
conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed
the billing rates listed in the chart herein. While the rate ranges provided for in this Application may change if
an individual leaves or joins Kirkland, if any such individual's billing rate falls outside the ranges disclosed above,
Kirkland does not intend to update the ranges for such circumstances.

[5]     Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event
that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect
to fees billed by such attorneys. Any contract attorneys or non-attorneys who are employed by the Debtors in
connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance
with the requirements of the Bankruptcy Code.

rates vary with the experience and seniority of the individuals assigned.  These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[6]

15.    Kirkland represented the Debtors during the six-month period before the Petition Date, using the hourly rates listed above and in the Greco Declaration.  Moreover, these hourly rates are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

16.    The rate structure provided by Kirkland is appropriate and not significantly different from (a) the rates that Kirkland charges for other similar types of representations or (b) the rates that other comparable counsel would charge to do work substantially similar to the work Kirkland will perform in these chapter 11 cases.

17.    It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client.  It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items.  Examples of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

18.    To ensure compliance with all applicable deadlines in these chapter 11 cases, from time to time Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter, which permits Kirkland to bill the Debtors for

---

[6]    For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority.  The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013).  As set forth in the Order, Kirkland will provide ten business-days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file any such notice with the Court.

overtime secretarial charges that arise out of business necessity. In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

19.    Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States. Notwithstanding the foregoing and consistent with the Local Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases. Kirkland does not charge its clients for incoming facsimile transmissions. Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research. Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

## Compensation Received by Kirkland from the Debtors

20.    Per the terms of the Engagement Letter, on November 2, 2022, the Debtors paid $200,000 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007). Subsequently, the Debtors paid to Kirkland additional advance payment retainer totaling $1,805,331.68 in the aggregate. As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors no longer have a property interest in any advance payment retainer upon Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any interest on any advance payment retainer.[7]

---

[7]    The Engagement Letter provides that Kirkland may continue to hold any remaining prepetition advance payment retainer during the pendency of a chapter 11 case rather than applying such advance payment retainer to postpetition fees and expenses. Kirkland evaluates whether to retain any remaining prepetition advance payment retainer on a case-by-case basis. In this particular case, Kirkland has elected not to hold any remaining prepetition

21.     Pursuant to Bankruptcy Rule 2016(b), Kirkland has neither shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

22.     As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred but not yet applied to Kirkland's advance payment retainer, the amount of Kirkland's advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) after February 22, 2023.

### Kirkland's Disinterestedness

23.     To the best of the Debtors' knowledge and as disclosed herein and in the Greco Declaration,  (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Greco Declaration.

24.     Kirkland will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to

---

advance payment retainer but, instead, will apply any remaining advance payment retainer to postpetition fees and expenses as such fees and expenses are allowed by the Court.  Notwithstanding the foregoing, Kirkland will reserve amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses as is necessary and appropriate to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

identify such further developments and will promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

## **Supporting Authority**

25.     The Debtors seek retention of Kirkland as their attorneys pursuant to section 327(a) of the Bankruptcy Code, which provides that a debtor, subject to Court approval:

> [M]ay employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor] in carrying out the [debtor]'s duties under this title.

11 U.S.C. § 327(a).

26.     Bankruptcy Rule 2014(a) requires that an application for retention include:

> [S]pecific facts showing the necessity for the employment, the name of the [firm] to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the [firm's] connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014.

27.     The Debtors submit that for all the reasons stated above and in the Greco Declaration, the retention and employment of Kirkland as counsel to the Debtors is warranted. Further, as stated in the Greco Declaration, Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in the Greco Declaration.

## **Notice**

28.     The Debtors have provided notice of this Application to the following parties or their respective counsel:  (a) the U.S. Trustee, (b) the Committee, (c) the United States Attorney's Office for the District of New Jersey, (d) the Internal Revenue Service, (e) the attorneys general in the states where the Debtors conduct their business operations; and (f) any party that has requested notice pursuant to Bankruptcy Rule 2002.  A copy of this Application is also available on the website of the Debtors' notice and claims agent at http://omniagentsolutions.com/davidsbridal.   In light of the nature of the relief requested, the Debtors submit that no other or further notice is required.

**<u>No Prior Request</u>**

29.     No prior request for the relief sought in this Application has been made to this or any other court.

*[Remainder of Page Intentionally Left Blank]*

WHEREFORE, the Debtors respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other relief as is just and proper.

Dated:  May 16, 2023                                    /s/ James Marcum
        Trenton, New Jersey                          James Marcum
                                 David's Bridal, LLC
                                 Chief Executive Officer

## EXHIBIT A

**Proposed Order**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)
**COLE SCHOTZ P.C.**
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
msirota@coleschotz.com
Felice R. Yudkin, Esq.
fyudkin@coleschotz.com
Rebecca W. Hollander, Esq.
rhollander@coleschotz.com

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
(212) 446-4900 Facsimile
Joshua A. Sussberg, P.C. (admitted *pro hac vice*)
joshua.sussberg@kirkland.com
Christopher T. Greco, P.C. (admitted *pro hac vice*)
christopher.greco@kirkland.com
Rachael M. Bentley (admitted *pro hac vice*)
rachael.bentley@kirkland.com
*-and-*
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
(312) 862-2000
(312) 862-2200 Facsimile
Alexandra Schwarzman, P.C. (admitted *pro hac vice*)
alexandra.schwarzman@kirkland.com

*Proposed Counsel to Debtors*

| | |
|---|---|
| In re:<br><br>DAVID'S BRIDAL, LLC, *et al.*,<br><br>          Debtors. [1] | Chapter 11<br><br>Case No. 23-13131 (CMG)<br><br>Judge:  Christine M. Gravelle<br><br>(Jointly Administered) |

---

[1]  The debtors in these chapter 11 cases, along with the last four digits of each debtor's federal tax identification number, are: David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); and Blueprint Registry, LLC (2335).  The location of debtor

(Page 2)

| | |
|---|---|
| Debtors: | DAVID'S BRIDAL, LLC., *et al*. |
| Case No. | 23-13131 (CMG) |
| Caption of Order: | ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023 |

---

## ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023

---

The relief set forth on the following pages, numbered three (3) through eight (8), is

hereby **ORDERED**.

---

David's Bridal, LLC's principal place of business and the debtors' service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

(Page 3)

| | |
|---|---|
| Debtors: | DAVID'S BRIDAL, LLC., *et al.* |
| Case No. | 23-13131 (CMG) |
| Caption of Order: | ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023 |

---

Upon the application (the "Application")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for the entry of an order (the "Order") authorizing the Debtors to retain and employ Kirkland & Ellis LLP and Kirkland & Ellis International LLP (collectively, "Kirkland") as their attorneys effective as of the Petition Date, pursuant to sections 327(a) and 330 of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Local Bankruptcy Rules for the District of New Jersey (the "Local Rules"); and the Court having reviewed the Application, the Declaration of Christopher T. Greco, the president of Christopher T. Greco, P.C., a partner of Kirkland & Ellis LLP, and a partner of Kirkland & Ellis International LLP (the "Greco Declaration"), and the declaration of James Marcum, the Chief Executive Officer of David's Bridal, LLC (the "Marcum Declaration"); and the Court having found that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and the Court having found that the Application is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having found that venue of this proceeding and the Application in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and the Court having found based on the representations made in the Application and in the Greco Declaration that (a) Kirkland does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland is a "disinterested person" as defined in section 101(14) of the Bankruptcy Code and

---

2    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

3

(Page 4)
Debtors:            DAVID'S BRIDAL, LLC., *et al.*
Case No.            23-13131 (CMG)
Caption of Order:   ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
                    KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
                    INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND
                    DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023

---

as required by section 327(a) of the Bankruptcy Code; and the Court having found that the relief

requested in the Application is in the best interests of the Debtors' estates; and the Court having

found that the Debtors provided adequate and appropriate notice of the Application under the

circumstances and that no other or further notice is required; and the Court having reviewed the

Application and having heard statements in support of the Application at a hearing held before the

Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth

in the Application and at the Hearing establish just cause for the relief granted herein; and any

objections to the relief requested herein having been withdrawn or overruled on the merits; and

after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1.      The Application is granted to the extent set forth herein.

2.      The Debtors are authorized to retain and employ Kirkland as their attorneys

effective as of the Petition Date in accordance with the terms and conditions set forth in the

Application and in the Engagement Letter attached hereto as **Exhibit 1**.

3.      Kirkland is authorized to provide the Debtors with the professional services as

described in the Application and the Engagement Letter.  Specifically, but without limitation,

Kirkland will render the following legal services:

   a.      advising the Debtors with respect to their powers and duties as debtors in
           possession in the continued management and operation of their businesses
           and properties;

   b.      advising and consulting on their conduct during these chapter 11 cases,
           including all of the legal and administrative requirements of operating in
           chapter 11;

(Page 5)

| | |
|---|---|
| Debtors: | DAVID'S BRIDAL, LLC., *et al.* |
| Case No. | 23-13131 (CMG) |
| Caption of Order: | ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023 |

---

c.  attending meetings and negotiating with representatives of creditors and other parties in interest;

d.  taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.  preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.  representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.  advising the Debtors in connection with any potential sale of assets;

h.  appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.  advising the Debtors regarding tax matters;

j.  taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

k.  performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

4.      Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

(Page 6)

| | |
|---|---|
| Debtors: | DAVID'S BRIDAL, LLC., *et al*. |
| Case No. | 23-13131 (CMG) |
| Caption of Order: | ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023 |

Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective as of November 1, 2013* (the "Revised UST Guidelines"), both in connection with the Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

5.      Notwithstanding anything in the Application, Declaration, or Engagement Letter to the contrary, Kirkland shall apply any remaining amounts of its prepetition advance payment retainer as a credit toward postpetition fees and expenses, after such postpetition fees and expenses are approved pursuant to an order of the Court awarding fees and expenses to Kirkland.  Kirkland is authorized without further order of the Court to reserve and apply amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses as are necessary and appropriate to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

6.      Notwithstanding anything to the contrary in the Application, the Engagement Letter, or the Declarations attached to the Application, the reimbursement provisions allowing the reimbursement of fees and expenses incurred in connection with participating in, preparing for, or responding to any action, claim, suit, or proceeding brought by or against any party that relates to the legal services provided under the Engagement Letter and fees for defending any objection to

(Page 7)
Debtors:                    DAVID'S BRIDAL, LLC., *et al*.
Case No.                    23-13131 (CMG)
Caption of Order:           ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
                            KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
                            INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND
                            DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023

Kirkland's fee applications under the Bankruptcy Code are not approved pending further order of the Court.

7.      Kirkland shall not charge a markup to the Debtors with respect to fees billed by contract attorneys who are hired by Kirkland to provide services to the Debtors and shall ensure that any such contract attorneys are subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code and Bankruptcy Rules.

8.      In order to avoid any duplication of effort and provide services to the Debtors in the most efficient and cost-effective manner, Kirkland shall coordinate with Cole Schotz and any additional firms the Debtors retain regarding their respective responsibilities in these chapter 11 cases.

9.      Kirkland shall provide ten-business-days' notice to the Debtors, the U.S. Trustee, and any official committee before any increases in the rates set forth in the Application or the Engagement Letter are implemented and shall file such notice with the Court.  The U.S. Trustee retains all rights to object to any rate increase on all grounds, including the reasonableness standard set forth in section 330 of the Bankruptcy Code, and the Court retains the right to review any rate increase pursuant to section 330 of the Bankruptcy Code.

10.     No agreement or understanding exists between Kirkland and any other person, other than as permitted by Bankruptcy Code section 504, to share compensation received for services rendered in connection with these chapter 11 cases, nor shall Kirkland share or agree to

(Page 8)
Debtors:            DAVID'S BRIDAL, LLC., *et al.*
Case No.            23-13131 (CMG)
Caption of Order:   ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF
                    KIRKLAND & ELLIS LLP AND KIRKLAND & ELLIS
                    INTERNATIONAL LLP AS ATTORNEYS FOR THE DEBTORS AND
                    DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023

---

share compensation received for services rendered in connection with these chapter 11 cases with any other person other than as permitted by Bankruptcy Code section 504.

11.     The Debtors and Kirkland are authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Application.

12.     Notice of the Application as provided therein is deemed to be good and sufficient notice of such Application, and the requirements of the Local Rules are satisfied by the contents of the Application.

13.     To the extent the Application, the Greco Declaration, the Marcum Declaration, or the Engagement Letter is inconsistent with this Order, the terms of this Order shall govern.

14.     The requirement set forth in Local Rule 9013-1(a)(3) that any motion be accompanied by a memorandum of law is hereby deemed satisfied by the contents of the Application or otherwise waived.

15.     The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

16.     The Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____
Trenton, New Jersey

_____

_____
CHRISTINE M. GRAVELLE
UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

**Engagement Letter**

# KIRKLAND & ELLIS LLP

### AND AFFILIATED PARTNERSHIPS

Alexandra Schwarzman
To Call Writer Directly:
+1 312 862 3160
alexandra.schwarzman@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

October 28, 2022

Lori Cochran Kinkade
SVP, Head of Legal
David's Bridal, LLC
1001 Washington Street
Consohocken, PA 19428

Re:   Retention to Provide Legal Services

Dear Ms. Kinkade:

We are very pleased that you have asked us to represent David's Bridal, LLC and only those wholly or partially owned subsidiaries listed in an addendum or supplement to this letter (collectively, "Client") in connection with a potential restructuring transaction.  Please note, the Firm's representation is only of Client; the Firm does not and will not represent any direct or indirect shareholder, director, officer, partner, employee, affiliate, or joint venturer of Client or of any other entity.

**General Terms.**  This retention letter (this "Agreement") sets forth the terms of Client's retention of Kirkland & Ellis  LLP (and its affiliated entity Kirkland & Ellis International LLP (collectively, the "Firm")) to provide legal services and constitutes an agreement between the Firm and Client (the "Parties").  This Agreement (notwithstanding any guidelines for outside counsel that Client may provide to the Firm) sets forth the Parties' entire agreement for rendering professional services for the current matter, as well as for all other existing or future matters (collectively, the "Engagement"), except where the Parties otherwise agree in writing.

**Fees.**  The Firm will bill Client for fees incurred at its regular hourly rates and in quarterly increments of an hour (or in smaller time increments as otherwise required by a court).  The Firm reserves the right to adjust the Firm's billing rates from time to time in the ordinary course of the Firm's representation of Client.

Although the Firm will attempt to estimate fees to assist Client in Client's planning if requested, such estimates are subject to change and are not binding unless otherwise expressly and unequivocally stated in writing.

Austin   Bay Area   Beijing   Boston   Brussels   Dallas   Hong Kong   Houston   London   Los Angeles   Munich   New York   Paris   Salt Lake City   Shanghai   Washington, D.C.
KE 91105576.6

# KIRKLAND & ELLIS LLP

October 28, 2022
Page 2

**CONFIDENTIAL**

**Expenses.**  Expenses related to providing services shall be included in the Firm's statements as disbursements advanced by the Firm on Client's behalf.  Such expenses include photocopying, printing, scanning, witness fees, travel expenses, filing and recording fees, certain secretarial overtime, and other overtime expenses, postage, express mail, and messenger charges, deposition costs, computerized legal research charges, and other computer services, and miscellaneous other charges.  Client shall pay directly (and is solely responsible for) certain larger costs, such as consultant or expert witness fees and expenses, and outside suppliers' or contractors' charges, unless otherwise agreed by the Parties.  By executing this Agreement below, Client agrees to pay for all charges in accordance with the Firm's schedule of charges, a copy of which is attached hereto at Schedule 1, as revised from time to time.

**Billing Procedures.**  The Firm's statements of fees and expenses are typically delivered monthly, but the Firm reserves the right to alter the timing of delivering its statements depending on circumstances.  Client may have the statement in any reasonable format it chooses, but the Firm will select an initial format for the statement unless Client otherwise requests in writing. Depending on the circumstances, however, estimated or summary statements may be provided, with time and expense details to follow thereafter.

**Retainer.**  Client agrees to provide to the Firm an "advance payment retainer," as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct, *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007), and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein), in the amount of $200,000.  In addition, Client agrees to provide one or more additional advance payment retainers upon request by the Firm so that the amount of any advance payment retainers remains at or above the Firm's estimated fees and expenses.  The Firm may apply the advance payment retainers to any outstanding fees as services are rendered and to expenses as they are incurred.  Client understands and acknowledges that any advance payment retainers are earned by the Firm upon receipt, any advance payment retainers become the property of the Firm upon receipt, Client no longer has a property interest in any advance payment retainers upon the Firm's receipt, any advance payment retainers will be placed in the Firm's general account and will not be held in a client trust account, and Client will not earn any interest on any advance payment retainers; provided, however, that solely to the extent required under applicable law, at the conclusion of the Engagement, if the amount of any advance payment retainers held by the Firm is in excess of the amount of the Firm's outstanding and estimated fees, expenses, and costs, the Firm will pay to Client the amount by which any advance payment retainers exceed such fees, expenses, and costs.  Client further understands and acknowledges that the use of advance payment retainers is an integral condition of the Engagement, and is necessary to ensure that:  Client continues to have access to the Firm's services; the Firm is compensated for its representation of Client; the Firm is not a pre-petition creditor in the event of a Restructuring Case; and that in light of the foregoing, the provision of the advance payment retainers is in Client's best interests.  The fact that Client

# KIRKLAND & ELLIS LLP

October 28, 2022
Page 3

CONFIDENTIAL

has provided the Firm with an advance payment retainer does not affect Client's right to terminate the client-lawyer relationship.

Please be advised that there is another type of retainer known as a "security retainer," as defined in *Dowling v. Chicago Options Assoc.*, 875 N.E.2d at 1018, and *In re Caesars Entm't Operating Co., Inc.*, No. 15-01145 (ABG) (Bankr. N.D. Ill. May 28, 2015) (and cases cited therein). A security retainer remains the property of the client until the lawyer applies it to charges for services that are actually rendered and expenses that are incurred. Any unearned funds are then returned to the client. In other circumstances not present here, the Firm would consider a security retainer and Client's funds would be held in the Firm's segregated client trust account until applied to pay fees and expenses. Funds in a security retainer, however, can be subject to claims of Client's creditors and, if taken by creditors, may leave Client unable to pay for ongoing legal services, which may result in the Firm being unable to continue the Engagement. Moreover, a security retainer creates clawback risks for the Firm in the event of an insolvency proceeding. The choice of the type of retainer to be used is Client's choice alone, but for the Engagement and for the reasons set forth above, the Firm is unwilling to represent Client in the Engagement without using the advance payment retainer.

**Termination.** The Engagement may be terminated by either Party at any time by written notice by or to Client. The Engagement will end at the earliest of (a) Client's termination of the Engagement, (b) the Firm's withdrawal, and (c) the substantial completion of the Firm's substantive work. If permission for withdrawal is required by a court, the Firm shall apply promptly for such permission, and termination shall coincide with the court order for withdrawal. If this Agreement or the Firm's services are terminated for any reason, such termination shall be effective only to terminate the Firm's services prospectively and all the other terms of this Agreement shall survive any such termination.

Upon cessation of the Firm's active involvement in a particular matter (even if the Firm continues active involvement in other matters on Client's behalf), the Firm will have no further duty to inform Client of future developments or changes in law as may be relevant to such matter. Further, unless the Parties mutually agree in writing to the contrary, the Firm will have no obligation to monitor renewal or notice dates or similar deadlines that may arise from the matters for which the Firm had been retained.

**Cell Phone and E-Mail Communication.** The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by cell telephone, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client does not wish the Firm to discuss privileged matters on cell telephones with Client or Client's professionals or agents.

# KIRKLAND & ELLIS LLP

October 28, 2022                                              **CONFIDENTIAL**
Page 4

  The Firm hereby informs Client and Client hereby acknowledges that the Firm's attorneys sometimes communicate with their clients and their clients' professionals and agents by unencrypted e-mail, that such communications are capable of being intercepted by others and therefore may be deemed no longer protected by the attorney-client privilege, and that Client must inform the Firm if Client wishes to institute a system to encode all e-mail between the Firm and Client or Client's professionals or agents.

  **File Retention.** All records and files will be retained and disposed of in compliance with the Firm's policy in effect from time to time. Subject to future changes, it is the Firm's current policy generally not to retain records relating to a matter for more than five years. Upon Client's prior written request, the Firm will return client records that are Client's property to Client prior to their destruction. Although we will return your records (i.e., your client file) to you at any time upon your written request, you agree that your client file will not include our Firm's internal files including administrative materials, internal communications, and drafts. It is not administratively feasible for the Firm to advise Client of the closing of a matter or the disposal of records. The Firm recommends, therefore, that Client maintain Client's own files for reference or submit a written request for Client's client files promptly upon conclusion of a matter. Notwithstanding anything to the contrary herein, Client acknowledges and agrees that any applicable privilege of Client (including any attorney-client and work product privilege or any duty of confidentiality) (collectively, the "Privileges") belongs to Client alone and not to any successor entity (including without limitation the Client after a change in control or other similar restructuring or non-restructuring transaction (including without limitation a reorganized Client after the effective date of a plan of reorganization), whether through merger, asset or equity sale, business combination, or otherwise, irrespective of whether such transaction occurs in a Restructuring Case or on an out-of-court basis (in each case, a "Transaction")). Client hereby waives any right, title, and interest of such successor entity to all information, data, documents, or communications in any format covered by the Privileges that is in the possession of the Firm ("Firm Materials"), to the extent that such successor entity had any right, title, and interest to such Firm Materials. For the avoidance of doubt, Client agrees and acknowledges that after a Transaction, such successor entity shall have no right to claim or waive the Privileges or request the return of any such Firm Materials; instead, such Firm Materials shall remain in the Firm's sole possession and control for its exclusive use, and the Firm will (a) not waive any Privileges or disclose the Firm Materials, (b) take all reasonable steps to ensure that the Privileges survive and remain in full force and effect, and (c) assert the Privileges to prevent disclosure of any Firm Materials.

  **Data Protection.** You further agree that, if you provide us with personal data, you have complied with applicable data protection legislation and that we may process such personal data in accordance with our Data Transfer and Privacy Policy at www.kirkland.com. We process your personal data in order to (i) carry out work for you; (ii) share the data with third parties such as expert witnesses and other professional advisers if our work requires; (iii) comply with applicable laws and regulations and (iv) provide you with information relating to our Firm and its services.

## KIRKLAND & ELLIS LLP

October 28, 2022

Page 5

**CONFIDENTIAL**

**Conflicts of Interest.** As is customary for a law firm of the Firm's size, there are numerous business entities, with which Client currently has relationships, that the Firm has represented or currently represents in matters unrelated to Client. The Firm notes that the Firm currently represents or has represented Oaktree Capital Management or their affiliates (collectively, the "Interested Parties") and will continue to do so in such unrelated matters. Because Client is engaged in activities (and may in the future engage in additional activities) in which Client's interests may diverge from those of the Interested Parties or the Firm's other clients, the possibility exists that the Interested Parties or one of the Firm's clients may take positions adverse to Client.

Further, in undertaking the representation of Client, the Firm wants to be fair not only to Client's interests but also to those of the Firm's other clients. Because Client is engaged in activities (and may in the future engage in additional activities) in which its interests may diverge from those of the Firm's other clients, the possibility exists that one of the Firm's current or future clients may take positions adverse to Client (including litigation or other dispute resolution mechanisms) in a matter in which such other client may have retained the Firm or one of Client's adversaries may retain the Firm in a matter adverse to another entity or person.

In the event a present conflict of interest exists between Client and the Firm's other clients or in the event one arises in the future, Client agrees to waive any such conflict of interest or other objection that would preclude the Firm's representation of another client (a) in other current or future matters substantially unrelated to the Engagement or (b) other than during a Restructuring Case (as defined below), in other matters related to Client (such representation an "Allowed Adverse Representation"). By way of example, such Allowed Adverse Representations might take the form of, among other contexts: litigation (including arbitration, mediation and other forms of dispute resolution); transactional work (including consensual and non-consensual merger, acquisition, and takeover situations, financings, and commercial agreements); counseling (including advising direct adversaries and competitors); and restructuring (including bankruptcy, insolvency, financial distress, recapitalization, equity and debt workouts, and other transactions or adversarial adjudicative proceedings related to any of the foregoing and similar matters).

Client also agrees that it will not, for itself or any other entity or person, assert that either (i) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (ii) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing another entity or person in any Allowed Adverse Representation. Client further agrees that any Allowed Adverse Representation does not breach any duty that the Firm owes to Client or any of Client's affiliates. Client also agrees that the Firm's representation in the Engagement is solely of Client and that no member or other entity or person related to it (such as a shareholder, parent, subsidiary, affiliate, director, officer, partner, employee, or joint venturer) has the status of a client for conflict of interest purposes.

# KIRKLAND & ELLIS LLP

October 28, 2022
Page 6

**CONFIDENTIAL**

In addition, if a waiver of a conflict of interest necessary to allow the Firm to represent another client in a matter that is not substantially related to the Engagement is not effective for any reason, Client agrees that the Firm may withdraw from the Engagement.  Should that occur, Client will not, for itself or any other entity or person, seek to preclude such termination of services or assert that either (a) the Firm's representation of Client or any of Client's affiliates in any past, present, or future matter or (b) the Firm's actual or possible possession of confidential information belonging to Client or any of Client's affiliates is a basis to disqualify the Firm from representing such other client or acting on such adverse matter.

It is important that you review this letter carefully and consider all of the advantages and disadvantages of waiving certain conflicts of interests that would otherwise bar the Firm from representing parties with interests adverse to you during the time in which the Firm is representing you.  You also understand that because this waiver includes future issues and future clients that are unknown and unknowable at this time, it is impossible to provide you with any more details about those prospective clients and matters.  Thus, in choosing to execute this waiver, you have recognized the inherent uncertainty about the array of potential matters and clients the Firm might take on in matters that are adverse to you but have nonetheless decided it is in your interest to waive conflicts of interest regarding the Allowed Adverse Representations and waive rights to prohibit the Firm's potential withdrawal should a conflict waiver prove ineffectual.

The Firm informs Client that certain entities owned by current or former Firm attorneys and senior staff ("Attorney Investment Entities") have investments in funds or companies that may, directly or indirectly, be affiliated with Client, hold investments in Client's debt or equity securities, may be adverse to Client, or conduct commercial transactions with Client (each, a "Passive Holding").  The Attorney Investment Entities are passive and have no management or other control rights in such funds or companies.  The Firm notes that other persons may in the future assert that a Passive Holding creates, in certain circumstances, a conflict between the Firm's exercise of its independent professional judgment in rendering advice to Client and the financial interest of Firm attorneys participating in the Attorney Investment Entities, and such other persons might seek to limit Client's ability to use the Firm to advise Client on a particular matter.  While the Firm cannot control what a person might assert or seek, the Firm believes that the Firm's judgment will not be compromised by virtue of any Passive Holding.  Please let us know if Client has any questions or concerns regarding the Passive Holdings.  By executing this letter, Client acknowledges the Firm's disclosure of the foregoing.

**<u>Restructuring Cases</u>**.  If it becomes necessary for Client to commence a restructuring case under chapter 11 of the U.S. Bankruptcy Code (a "Restructuring Case"), the Firm's ongoing employment by Client will be subject to the approval of the court with jurisdiction over the petition.  If necessary, the Firm will take steps necessary to prepare the disclosure materials required in connection with the Firm's retention as lead restructuring counsel.  In the near term, the Firm will begin conflicts checks on potentially interested parties as provided by Client.

# KIRKLAND & ELLIS LLP

**CONFIDENTIAL**

If necessary, the Firm will prepare a preliminary draft of a schedule describing the Firm's relationships with certain interested parties (the "Disclosure Schedule").  The Firm will give Client a draft of the Disclosure Schedule once it is available.  Although the Firm believes that these relationships do not constitute actual conflicts of interest, these relationships must be described and disclosed in Client's application to the court to retain the Firm.

If in the Firm's determination a conflict of interest arises in Client's Restructuring Case requiring separate conflicts counsel, then Client will be required to use separate conflicts counsel in those matters.

**No Guarantee of Success.**  It is impossible to provide any promise or guarantee about the outcome of Client's matters.  Nothing in this Agreement or any statement by Firm staff or attorneys constitutes a promise or guarantee.  Any comments about the outcome of Client's matter are simply expressions of judgment and are not binding on the Firm.

**Reimbursement of Fees and Expenses.**  Client agrees to promptly reimburse the Firm for all internal or external fees and expenses, including the amount of the Firm's attorney and paralegal time at normal billing rates, as incurred by the Firm in connection with participating in, preparing for, or responding to any action, claim, objection, suit, or proceeding brought by or against any third-party that relates to the legal services provided by the Firm under this Agreement.  Without limiting the scope of the foregoing, and by way of example only, this paragraph extends to all such fees and expenses incurred by the Firm: in responding to document subpoenas, and preparing for and testifying at depositions and trials; and with respect to the filing, preparation, prosecution or defense of any applications by the Firm for approval of fees and expenses in a judicial, arbitral, or similar proceeding.  Further, Client understands, acknowledges, and agrees that in connection with a Restructuring Case, if Client has not objected to the payment of a Firm invoice or to a Firm fee and expense application, has in fact paid such invoice, or has approved such fee and expense application, then Client waives its right (and the right of any successor entity as a result of a Transaction or otherwise) to subsequently object to the payment of fees and expenses covered by such invoice or fee application.

**LLP.**  Kirkland & Ellis LLP is a limited liability partnership organized under the laws of Illinois, and Kirkland & Ellis International LLP is a limited liability partnership organized under the laws of Delaware.  Pursuant to those statutory provisions, an obligation incurred by a limited liability partnership, whether arising in tort, contract or otherwise, is solely the obligation of the limited liability partnership, and partners are not personally liable, directly or indirectly, by way of indemnification, contribution, assessment or otherwise, for such obligation solely by reason of being or so acting as a partner.

**Governing Law**.  This Agreement shall be governed by, and construed in accordance with, the laws of the State of Illinois, without giving effect to the conflicts of law principles thereof.

# KIRKLAND & ELLIS LLP

October 28, 2022

Page 8

**CONFIDENTIAL**

**Miscellaneous.**  This Agreement sets forth the Parties' entire agreement for rendering professional services.  It can be amended or modified only in writing and not orally or by course of conduct.  Each Party signing below is jointly and severally responsible for all obligations due to the Firm and represents that each has full authority to execute this Agreement so that it is binding.  This Agreement may be signed in one or more counterparts and binds each Party countersigning below, whether or not any other proposed signatory ever executes it.  If any provision of this Agreement or the application thereof is held invalid or unenforceable, the invalidity or unenforceability shall not affect other provisions or applications of this Agreement which can be given effect without such provisions or application, and to this end the provisions of this Agreement are declared to be severable.  Any agreement or waiver contained herein by Client extends to any assignee or successor in interest to Client, including without limitation the reorganized Client upon and after the effective date of a plan of reorganization in a Restructuring Case.

This Agreement is the product of arm's-length negotiations between sophisticated parties, and Client acknowledges that it is experienced with respect to the retention of legal counsel. Therefore, the Parties acknowledge and agree that any otherwise applicable rule of contract construction or interpretation which provides that ambiguities shall be construed against the drafter (and all similar rules of contract construction or interpretation) shall not apply to this Agreement. The Parties further acknowledge that the Firm is not advising Client with respect to this Agreement because the Firm would have a conflict of interest in doing so, and that Client has consulted (or had the opportunity to consult) with legal counsel of its own choosing.  Client further acknowledges that Client has entered into this Agreement and agreed to all of its terms and conditions voluntarily and fully-informed, based on adequate information and Client's own independent judgment.  The Parties further acknowledge that they intend for this Agreement to be effective and fully enforceable upon its execution and to be relied upon by the Parties.

* * *

# KIRKLAND & ELLIS LLP

October 28, 2022                                          **CONFIDENTIAL**
Page 9

Please confirm your agreement with the arrangements described in this letter by signing the enclosed copy of this letter in the space provided below and returning it to us.  Please understand that, if we do not receive a signed copy of this letter within twenty-one days, we will withdraw from representing you in this Engagement.

Very truly yours,

KIRKLAND & ELLIS LLP

By: _____

Printed Name:  Alexandra Schwarzman
Title:  Partner

Agreed and accepted this <u>29</u> of October, 2022

David's Bridal, LLC

By: _____
Name:    Lori C. Kinkade
Title:    SVP, Head of Legal & Secretary

# KIRKLAND & ELLIS LLP

October 28, 2022
Page 10

**CONFIDENTIAL**

## ADDENDUM: List of Client Subsidiaries

Aligned for the Frontline, LLC

Blueprint Registry, LLC

David's Bridal Canada, Inc.

David's Bridal UK Limited

David's Bridal, LLC

DBI Holdco, Inc.

DBI Holdco II, Inc.

DBI Investors, Inc.

DBI Midco, Inc.

October 28, 2022
Page No. 1

## KIRKLAND & ELLIS LLP

## CLIENT-REIMBURSABLE EXPENSES AND OTHER CHARGES

*Effective 01/01/2022*

The following outlines Kirkland & Ellis LLP's ("K&E LLP") policies and standard charges for various services performed by K&E LLP and/or by other third parties on behalf of the client which are often ancillary to our legal services. Services provided by in-house K&E LLP personnel are for the convenience of our clients. Given that these services are often ancillary to our legal services, in certain instances it may be appropriate and/or more cost efficient for these services to be outsourced to a third-party vendor. If services are provided beyond those outlined below, pricing will be based on K&E LLP's approximate cost and/or comparable market pricing.

- **Duplicating, Reprographics and Printing**: The following list details K&E LLP's charges for duplicating, reprographics and printing services:

    - Black and White Copy or Print (all sizes of paper):
        - $0.16 per impression for all U.S. offices
        - €0.10 per impression in Munich
        - £0.15 per impression in London
        - HK$1.50 per impression in Hong Kong
        - RMB1.00 per impression in Beijing and Shanghai
    - Color Copy or Print (all sizes of paper):
        - $0.55 per impression
    - Scanned Images:
        - $0.16 per page for black and white or color scans
    - Other Services:
        - CD/DVD Duplicating or Mastering - $7/$10 per CD/DVD
        - Binding - $0.70 per binding
        - Large or specialized binders - $13/$27
        - Tabs - $0.13 per item
        - OCR/File Conversion - $0.03 per page
        - Large Format Printing - $1.00 per sq. ft.

- **Secretarial and Word Processing**: Clients are not charged for secretarial and word processing activities incurred on their matters during standard business hours.

- **Overtime Charges**: Clients will be charged for overtime costs for secretarial and document services work if either (i) the client has specifically requested the after-hours work or (ii) the nature of the work being done for the client necessitates out-of-hours overtime and such work could not have been done during normal working hours. If these conditions are satisfied, costs for related overtime meals and transportation also will be charged.

1

KE 91105576.6

October 28, 2022
Page No. 2

- **Travel Expenses**:  We charge clients our out-of-pocket costs for travel expenses including associated travel agency fees.  We charge coach fares (business class for international flights) unless the client has approved business-class, first-class or an upgrade.  K&E LLP personnel are instructed to incur only reasonable airfare, hotel and meal expenses.  K&E LLP negotiates, uses, and passes along volume discount hotel and air rates whenever practicable.  However, certain retrospective rebates may not be passed along.

- **Catering Charges:**  Clients will be charged for any in-house catering service provided in connection with client matters.

- **Communication Expenses**:  We do not charge clients for telephone calls or faxes made from K&E LLP's offices with the exception of third-party conference calls and videoconferences.

  Charges incurred for conference calls, videoconferences, cellular telephones, and calls made from other third-party locations will be charged to the client at the actual cost incurred.  Further, other telecommunication expenses incurred at third-party locations (e.g., phone lines at trial sites, Internet access, etc.) will be charged to the client at the actual cost incurred.

- **Overnight Delivery/Postage**:  We charge clients for the actual cost of overnight and special delivery (e.g., Express Mail, FedEx, and DHL), and U.S. postage for materials mailed on the client's behalf.  K&E LLP negotiates, uses, and passes along volume discount rates whenever practicable.

- **Messengers**:  We charge clients for the actual cost of a third party vendor messenger.

- **Library Research Services:**  Library Research staff provides research and document retrieval services at the request of attorneys, and clients are charged per hour for these services.  Any expenses incurred in connection with the request, such as outside retrieval service or online research charges, are passed on to the client at cost, including any applicable discounts.

- **Online Research Charges**:  K&E LLP charges for costs incurred in using third-party online research services in connection with a client matter.  K&E LLP negotiates and uses discounts or special rates for online research services whenever possible and practicable and passes through the full benefit of any savings to the client based on actual usage.

- **Inter-Library Loan Services:**  Our standard client charge for inter-library loan services when a K&E LLP library employee borrows a book from an outside source is $25 per title.  There is no client charge for borrowing books from K&E LLP libraries in other cities or from outside collections when the title is part of the K&E LLP collection but unavailable.

2

October 28, 2022
Page No. 3

- **Off-Site Legal Files Storage**:  Clients are not charged for off-site storage of files unless the storage charge is approved in advance.

- **Electronic Data Storage**:  K&E LLP will not charge clients for costs to store electronic data and files on K&E LLP's systems if the data stored does not exceed 100 gigabytes (GB).  If the data stored for a specific client exceeds 100GB, K&E LLP will charge clients $6.00 per month/per GB for all network data stored until the data is either returned to the client or properly disposed of.  For e-discovery data on the Relativity platform, K&E LLP will also charge clients $6.00 per month/per GB until the data is either returned to the client or properly disposed of.

- **Calendar Court Services**:  Our standard charge is $25 for a court filing and other court services or transactions.

- **Supplies**:  There is no client charge for standard office supplies.  Clients are charged for special items (e.g., a minute book, exhibit tabs/indexes/dividers, binding, etc.) and then at K&E LLP's actual cost.

- **Contract Attorneys and Contract Non-Attorney Billers**:  If there is a need to utilize a contract attorney or contract non-attorney on a client engagement, clients will be charged a standard hourly rate for these billers unless other specific billing arrangements are agreed between K&E LLP and client.

- **Expert Witnesses, Experts of Other Types, and Other Third Party Consultants**:  If there is a need to utilize an expert witness, expert of other type, or other third party consultant such as accountants, investment bankers, academicians, other attorneys, etc. on a client engagement, clients will be requested to retain or pay these individuals directly unless specific billing arrangements are agreed between K&E LLP and client.

- **Third Party Expenditures**:  Third party expenditures (e.g., corporate document and lien searches, lease of office space at Trial location, IT equipment rental, SEC and regulatory filings, etc.) incurred on behalf of a client, will be passed through to the client at actual cost.  If the invoice exceeds $50,000, it is K&E LLP's policy that wherever possible such charges will be directly billed to the client.  In those circumstances where this is not possible, K&E LLP will seek reimbursement from our client prior to paying the vendor.

Unless otherwise noted, charges billed in foreign currencies are determined annually based on current U.S. charges at an appropriate exchange rate.

KE 91105576.6

## EXHIBIT B

**Greco Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, LLC, *et al.*,[1] | Case No. 23-13131 (CMG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF CHRISTOPHER T. GRECO IN SUPPORT
OF THE DEBTORS' APPLICATION FOR ENTRY OF AN ORDER
AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND &
ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR
THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023**

I, Christopher T. Greco, being duly sworn, state the following under penalty of perjury:

1.      I am the president of Christopher T. Greco, P.C., a partner of the law firm of Kirkland & Ellis LLP, located at 601 Lexington Avenue, New York, New York 10022, and a partner of Kirkland & Ellis International, LLP (together with Kirkland & Ellis LLP, collectively, "Kirkland").[2]  I am one of the lead attorneys from Kirkland working on the above-captioned chapter 11 cases.  I am a member in good standing of the Bar of the State of New York and New Jersey, and I have been admitted to practice in the United States Supreme Court, the United States District Court for the Southern District of New York, the United States District Court for the Northern District of Illinois, and I have been admitted *pro hac vice* in the United States

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); Blueprint Registry, LLC (2335).  The location of Debtor David's Bridal, LLC's service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

[2]     Capitalized terms used but not otherwise defined herein shall have the meaning as set forth in the Application.

Bankruptcy Court for the District of New Jersey.  There are no disciplinary proceedings pending against me.

2.      I submit this declaration (the "<u>Declaration</u>") in support of the Debtors' *Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of April 17, 2023* (the "<u>Application</u>").[3]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

### Kirkland's Qualifications

3.      The Debtors seek to retain Kirkland because of Kirkland's recognized expertise and extensive experience and knowledge in the field of debtors' protections, creditors' rights, and business reorganizations under chapter 11 of the Bankruptcy Code.

4.      Kirkland has been actively involved in major chapter 11 cases and has represented debtors in many cases in this district and in others in the Third Circuit, including, among others: *In re BlockFi Inc.*, No. 22-19361 (MBK) (Bankr. D.N.J. Feb. 1, 2023); *In re Carestream Health, Inc.*, No. 22-10778 (JKS) (Bankr. D. Del. Oct. 7, 2022); *In re Riverbed Technology, Inc.*, No. 21-11503 (CTG) (Bankr. D. Del. Dec. 8, 2021); *In re Alex and Ani, LLC*, No. 21-10918 (CTG) (Bankr. D. Del. July 15, 2021); *In re Highpoint Resources Corp.*, No. 21-10565 (CSS) (Bankr. D. Del. Apr. 13, 2021); *In re Destination Maternity Corp.*, No. 19-12256 (BLS) (Bankr. D. Del. Nov. 20, 2019).[4]

---

[3]    Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

[4]    Because of the voluminous nature of the orders cited in this Declaration, they are not attached to this Declaration. Copies of these orders are available upon request to Kirkland.

5.     In preparing for its representation of the Debtors in these chapter 11 cases, Kirkland

has become familiar with the Debtors' business and many of the potential legal issues that may

arise in the context of these chapter 11 cases.  I believe that Kirkland is both well-qualified and

uniquely able to represent the Debtors in these chapter 11 cases in an efficient and timely manner.

### Services to Be Provided

6.     Subject to further order of the Court and that certain engagement letter dated

October 29, 2022 (the "Engagement Letter"), a copy of which is attached as **Exhibit 1** to the Order,

the Debtors retained Kirkland to render, without limitation, the following legal services:

a.     advising the Debtors with respect to their powers and duties as debtor in possession in the continued management and operation of their businesses and properties;

b.     advising and consulting on the conduct of these chapter 11 cases, including all of the legal and administrative requirements of operating in chapter 11;

c.     attending meetings and negotiating with representatives of creditors and other parties in interest;

d.     taking all necessary actions to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors in negotiations concerning litigation in which the Debtors are involved, including objections to claims filed against the Debtors' estates;

e.     preparing pleadings in connection with these chapter 11 cases, including motions, applications, answers, orders, reports, and papers necessary or otherwise beneficial to the administration of the Debtors' estates;

f.     representing the Debtors in connection with obtaining authority to continue using cash collateral and postpetition financing;

g.     advising the Debtors in connection with any potential sale of assets;

h.     appearing before the Court and any appellate courts to represent the interests of the Debtors' estates;

i.     advising the Debtors regarding tax matters;

3

     j.     taking any necessary action on behalf of the Debtors to negotiate, prepare, and obtain approval of a disclosure statement and confirmation of a chapter 11 plan and all documents related thereto; and

     k.     performing all other necessary legal services for the Debtors in connection with the prosecution of these chapter 11 cases, including: (i) analyzing the Debtors' leases and contracts and the assumption and assignment or rejection thereof; (ii) analyzing the validity of liens against the Debtors' assets; and (iii) advising the Debtors on corporate and litigation matters.

7.     By separate application, the Debtors have also asked the Court to approve the retention of Cole Schotz as bankruptcy co-counsel to the Debtors.  In order to avoid any duplication of effort and provide services to the Debtors in the most efficient and cost-effective manner, Kirkland will coordinate with Cole Schotz and any other firms the Debtors retain regarding their respective responsibilities in these chapter 11 cases.

8.     Cole Schotz is primarily responsible for the following:

     a.     advising the Debtors with respect to day to day ordinary course operations and transactions;

     b.     addressing day to day ordinary course litigation issues, including, but not limited to, responding to demands, threats, civil subpoenas, claims, and lawsuits;

     c.     advising the Debtors with respect to executory contract and lease issues including assumption and rejection thereof;

     d.     advising the Debtors as to vendor and landlord issues;

     e.     advising the Debtors on employee related matters;

     f.     advising the Debtors with respect to their consulting agreement and liquidation of inventory;

     g.     preparing, with the assistance of Omni Agent Solutions, the Debtors' schedules of assets and liabilities and statements of financial affairs;

     h.     drafting and filing motions, applications, schedules, lists, and other papers or documents required in connection with the chapter 11 cases; and

     i.     responding to creditor and party-in-interest inquiries directed to Cole Schotz.

4

9.       Kirkland is primarily responsible for the following:

    a.       overseeing internal investigations by independent directors;

    b.       advising the Debtors with respect to any and all issues relating to the Debtors' debtor-in-possession financing and use of cash collateral;

    c.       advising the Debtors with respect to their sale process;

    d.       providing transactional support in connection with the Debtors' sale process;

    e.       communicating with the Debtors' board of directors;

    f.       drafting the Debtors' chapter 11 plan and disclosure statement; and

    g.       responding to creditor and party-in-interest inquiries directed at Kirkland.

**Professional Compensation**

10.      Kirkland intends to apply for compensation for professional services rendered on an hourly basis and reimbursement of expenses incurred in connection with these chapter 11 cases, subject to the Court's approval and in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable procedures and orders of the Court.  The hourly rates and corresponding rate structure Kirkland will use in these chapter 11 cases are the same as the hourly rates and corresponding rate structure that Kirkland uses in other debtor representations, and are comparable to the hourly rates and corresponding rate structure that Kirkland uses for complex corporate, securities, and litigation matters whether in court or otherwise, regardless of whether a fee application is required.  These rates and the rate structure reflect that such restructuring and other complex matters typically are national in scope and involve great complexity, high stakes, and severe time pressures.

11.      Kirkland operates in a national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance, and reputation, the nature of the work involved, and other factors.

12.     Kirkland's current hourly rates for matters related to these chapter 11 cases range as follows:[5]

| Billing Category[6] | U.S. Range |
|---|---|
| Partners | $1,195-$2,245 |
| Of Counsel | $820-$2,125 |
| Associates | $685-$1,395 |
| Paraprofessionals | $295-$575 |

13.     Kirkland's hourly rates are set at a level designed to compensate Kirkland fairly for the work of its attorneys and paralegals and to cover fixed and routine expenses. Hourly rates vary with the experience and seniority of the individuals assigned. These hourly rates are subject to periodic adjustments to reflect economic and other conditions.[7]

14.     It is Kirkland's policy to charge its clients in all areas of practice for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. It is also Kirkland's policy to charge its clients only the amount actually incurred by Kirkland in connection with such items. Examples

---

[5]   For professionals and paraprofessionals residing outside of the U.S., hourly rates are billed in the applicable currency. When billing a U.S. entity, such foreign rates are converted into U.S. dollars at the then applicable conversion rate. After converting these foreign rates into U.S. dollars, it is possible that certain rates may exceed the billing rates listed in the chart herein. While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

[6]   Although Kirkland does not anticipate using contract attorneys during these chapter 11 cases, in the unlikely event that it becomes necessary to use contract attorneys, Kirkland will not charge a markup to the Debtors with respect to fees billed by such attorneys. Moreover, any contract attorneys or non-attorneys who are employed by the Debtors in connection with work performed by Kirkland will be subject to conflict checks and disclosures in accordance with the requirements of the Bankruptcy Code.

[7]   For example, like many of its peer law firms, Kirkland typically increases the hourly billing rate of attorneys and paraprofessionals twice a year in the form of: (i) step increases historically awarded in the ordinary course on the basis of advancing seniority and promotion and (ii) periodic increases within each attorney's and paraprofessional's current level of seniority. The step increases do not constitute "rate increases" (as the term is used in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases*, effective November 1, 2013). As set forth in the Order, Kirkland will provide ten business days' notice to the Debtors, the U.S. Trustee, and any official committee before implementing any periodic increases, and shall file such notice with the Court.

of such expenses include postage, overnight mail, courier delivery, transportation, overtime expenses, computer-assisted legal research, photocopying, airfare, meals, and lodging.

15.    To ensure compliance with all applicable deadlines in these chapter 11 cases, Kirkland utilizes the services of overtime secretaries.  Kirkland charges fees for these services pursuant to the Engagement Letter between Kirkland and the Debtors, which permits Kirkland to bill the Debtors for overtime secretarial charges that arise out of business necessity.  In addition, Kirkland professionals also may charge their overtime meals and overtime transportation to the Debtors consistent with prepetition practices.

16.    Kirkland currently charges the Debtors $0.16 per page for standard duplication in its offices in the United States.  Notwithstanding the foregoing and consistent with the Local Rules, Kirkland will charge no more than $0.10 per page for standard duplication services in these chapter 11 cases.  Kirkland does not charge its clients for incoming facsimile transmissions.  Kirkland has negotiated a discounted rate for Westlaw computer-assisted legal research.  Computer-assisted legal research is used whenever the researcher determines that using Westlaw is more cost effective than using traditional (non-computer assisted legal research) techniques.

**Compensation Received by Kirkland from the Debtors**

17.    Per the terms of the Engagement Letter, on November 2, 2022, the Debtors paid $200,000 to Kirkland, which, as stated in the Engagement Letter, constituted an "advance payment retainer" as defined in Rule 1.15(c) of the Illinois Rules of Professional Conduct and *Dowling v. Chicago Options Assoc., Inc.*, 875 N.E.2d 1012, 1018 (Ill. 2007).  Subsequently, the Debtors paid to Kirkland additional advance payment retainer totaling $1,805,331.68 in the aggregate.  As stated in the Engagement Letter, any advance payment retainer is earned by Kirkland upon receipt, any advance payment retainer becomes the property of Kirkland upon receipt, the Debtors no longer

7

have a property interest in any advance payment retainer upon Kirkland's receipt, any advance payment retainer will be placed in Kirkland's general account and will not be held in a client trust account, and the Debtors will not earn any interest on any advance payment retainer.[8]

18.      As of the Petition Date, the Debtors did not owe Kirkland any amounts for legal services rendered before the Petition Date.  Although certain expenses and fees may have been incurred, but not yet applied to Kirkland's advance payment retainer, Kirkland's total advance payment retainer always exceeded any amounts listed or to be listed on statements describing services rendered and expenses incurred (on a "rates times hours" and "dates of expenses incurred" basis) after February 22, 2023.

19.      Pursuant to Bankruptcy Rule 2016(b), Kirkland has not shared nor agreed to share (a) any compensation it has received or may receive with another party or person, other than with the partners, associates, and contract attorneys associated with Kirkland or (b) any compensation another person or party has received or may receive.

### Statement Regarding U.S. Trustee Guidelines

20.      Kirkland shall apply for compensation for professional services rendered and reimbursement of expenses incurred in connection with the Debtors' chapter 11 cases in compliance with sections 330 and 331 of the Bankruptcy Code and applicable provisions of the Bankruptcy Rules, Local Rules, and any other applicable procedures and orders of the Court.

---

[8]    The Engagement Letter provides that Kirkland may continue to hold any remaining prepetition advance payment retainer during the pendency of a chapter 11 case rather than applying such advance payment retainer to postpetition fees and expenses.  Kirkland evaluates whether to retain any remaining prepetition advance payment retainer on a case-by-case basis.  In this particular case, Kirkland has elected not to hold any remaining prepetition advance payment retainer but, instead, will apply any remaining advance payment retainer to postpetition fees and expenses as such fees and expenses are allowed by the Court.  Notwithstanding the foregoing, Kirkland will reserve amounts from the prepetition advance payment retainer that would otherwise be applied toward payment of postpetition fees and expenses as is necessary and appropriate to compensate and reimburse Kirkland for fees or expenses incurred on or prior to the Petition Date consistent with its ordinary course billing practices.

Kirkland also intends to make a reasonable effort to comply with the U.S. Trustee's requests for information and additional disclosures as set forth in the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases Effective As of November 1, 2013* (the "Revised UST Guidelines"), both in connection with this Application and the interim and final fee applications to be filed by Kirkland in these chapter 11 cases.

## **Attorney Statement Pursuant to Revised UST Guidelines**

21.      The following is provided in response to the request for additional information set forth in Paragraph D.1. of the Revised UST Guidelines:

a.  **Question**: Did Kirkland agree to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement?

**Answer**: No. Kirkland and the Debtors have not agreed to any variations from, or alternatives to, Kirkland's standard billing arrangements for this engagement.  The rate structure provided by Kirkland is appropriate and is not significantly different from (a) the rates that Kirkland charges for other non-bankruptcy representations or (b) the rates of other comparably skilled professionals.

b.  **Question**: Do any of the Kirkland professionals in this engagement vary their rate based on the geographic location of the Debtors' chapter 11 cases?

**Answer**: No. The hourly rates used by Kirkland in representing the Debtors are consistent with the rates that Kirkland charges other comparable chapter 11 clients, regardless of the location of the chapter 11 case.

c.  **Question**: If Kirkland has represented the Debtors in the 12 months prepetition, disclose Kirkland's billing rates and material financial terms for the prepetition engagement, including any adjustments during the 12 months prepetition.  If Kirkland's billing rates and material financial terms have changed postpetition, explain the difference and the reasons for the difference.

**Answer**: Kirkland's current hourly rates for services rendered on behalf of the Debtors range as follows: [9]

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,195-$2,245 |
| Of Counsel | $820-$2,125 |
| Associates | $685-$1,395 |
| Paraprofessionals | $295-$575 |

From October 29, 2022, through December 31, 2022, Kirkland's hourly rates for services rendered on behalf of the Debtors ranged as follows:

| Billing Category | U.S. Range |
|---|---|
| Partners | $1,135-$1,995 |
| Of Counsel | $805-$1,845 |
| Associates | $650-$1,245 |
| Paraprofessionals | $265-$495 |

d.  **Question**:  Have the Debtors approved Kirkland's budget and staffing plan, and, if so, for what budget period?

**Answer**: Yes, for the period from April 17, 2023 through July 31, 2023.

**Kirkland's Disinterestedness**

22.    In connection with its proposed retention by the Debtors in these chapter 11 cases, Kirkland undertook to determine whether it had any conflicts or other relationships that might cause it not to be disinterested or to hold or represent an interest adverse to the Debtors. Specifically, Kirkland obtained from the Debtors and their representatives the names of individuals and entities that may be parties in interest in these chapter 11 cases (the "Potential Parties in Interest") and such parties are listed on **Schedule 1** hereto.  Kirkland has searched its electronic database for its connections to the entities listed on **Schedule 1** hereto.  In addition, after Kirkland

---

[9]    While the rate ranges provided for in this Application may change if an individual leaves or joins Kirkland, and if any such individual's billing rate falls outside the ranges disclosed above, Kirkland does not intend to update the ranges for such circumstances.

10

identified all client connections with the parties in interest over a specified time period, Kirkland circulated a survey email to all Kirkland attorneys who billed 10 or more hours to such clients during the prior six years.  Further, beyond the individual emails, Kirkland sent a daily report of new matters firm wide.  All Kirkland attorneys are responsible for reviewing the daily report of new matters and raising any potential concerns with respect to new representations.  Kirkland did not receive any answers in the affirmative to these emails.  Additionally, to the extent that I have been able to ascertain that Kirkland has been retained within the last three years to represent any of the Potential Parties in Interest (or their affiliates, as the case may be) in matters unrelated to these cases, such facts are disclosed on **Schedule 2** attached hereto.

23.     Kirkland and certain of its partners and associates may have in the past represented, may currently represent, and likely in the future will represent, entities that may be parties in interest in these chapter 11 cases in connection with matters unrelated (except as otherwise disclosed herein) to the Debtors and these chapter 11 cases.  Kirkland has searched its electronic database for its connections to the entities listed on **Schedule 1** attached hereto.  The information listed on **Schedule 1** may have changed without our knowledge and may change during the pendency of these chapter 11 cases.  Accordingly, Kirkland will update this Declaration as necessary and when Kirkland becomes aware of additional material information.  The following is a list of the categories that Kirkland has searched:[10]

| **Schedule** | **Category** |
|---|---|
| 1(a) | Debtors and Debtor Affiliates |
| 1(b) | Current Directors and Officers |
| 1(c) | Former Directors and Officers |
| 1(d) | Bankruptcy Judges |

---

[10]  Kirkland's inclusion of parties in the following Schedules is solely to illustrate Kirkland's conflict search process and is not an admission that any party has a valid claim against the Debtors or that any party properly belongs in the schedules or has a claim or legal relationship to the Debtors of the nature described in the schedules.

11

| 1(e) | Banks |
| 1(f) | Benefits Providers |
| 1(g) | Significant Equity Holders |
| 1(h) | Insurance – Surety Bonds |
| 1(i) | Landlords |
| 1(j) | Lenders |
| 1(k) | Letters of Credit |
| 1(l) | Litigation Parties |
| 1(m) | Ordinary Course Professionals |
| 1(n) | Restructuring Professionals |
| 1(o) | Significant Vendors |
| 1(p) | Taxing Authorities |
| 1(q) | U.S. Trustee Personnel and Bankruptcy Judges |
| 1(r) | Utilities |

24.     To the best of my knowledge, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed in this Declaration.

25.     Listed on **Schedule 2** to this Declaration are the results of Kirkland's conflicts searches of the above-listed entities.[11]  For the avoidance of doubt, Kirkland will not commence a cause of action in these chapter 11 cases against the entities listed on **Schedule 2** that are current clients of Kirkland (including entities listed below under the "Specific Disclosures" section of this

---

[11]   As referenced in **Schedule 2**, the term "current client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 12 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "former client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted between 12 and 36 months preceding the Petition Date.  As referenced in **Schedule 2**, the term "closed client" means an entity listed as a client in Kirkland's conflicts search system to whom time was posted in the 36 months preceding the Petition Date, but for which the client representation has been closed. Whether an actual client relationship exists can only be determined by reference to the documents governing Kirkland's representation rather than its potential listing in Kirkland's conflicts search system.  The list generated from Kirkland's conflicts search system is over-inclusive.  As a general matter, Kirkland discloses connections with "former clients" or "closed clients" for whom time was posted in the last 36 months, but does not disclose connections if time was billed more than 36 months before the Petition Date.

Declaration) unless Kirkland has an applicable waiver on file or first receives a waiver from such

entity allowing Kirkland to commence such an action.  To the extent that a waiver does not exist

or is not obtained from such entity and it is necessary for the Debtors to commence an action

against that entity, the Debtors will be represented in such particular matter by conflicts counsel.

26.    None of the entities listed on **Schedule 2** represented more than one percent of

Kirkland's fee receipts for the twelve months preceding the Petition Date.

27.    Kirkland's conflicts search of the entities listed on **Schedules 1(a) – 1(r)** (that

Kirkland was able to locate using its reasonable efforts) reveals, to the best of my knowledge, that

those Kirkland attorneys and paraprofessionals who previously worked at other law firms that

represented such entities in these chapter 11 cases have not worked on matters relating to the

Debtors' restructuring efforts while at Kirkland.

28.    Based on the conflicts search conducted to date and described herein, to the best of

my knowledge, neither I, Kirkland, nor any partner or associate thereof, insofar as I have been able

to ascertain, have any connection with the Debtors, their creditors, or any other parties in interest,

their respective attorneys and accountants, the United States Trustee for the District of New Jersey

(the "U.S. Trustee"), any person employed by the U.S. Trustee, or any Bankruptcy Judge currently

serving on the United States Bankruptcy Court for the District of New Jersey, except as disclosed

or otherwise described herein.

29.    Kirkland will review its files periodically during the pendency of these chapter 11

cases to ensure that no conflicts or other disqualifying circumstances exist or arise.  If any new

relevant facts or relationships are discovered or arise, Kirkland will use reasonable efforts to

identify such further developments and will promptly file a supplemental declaration, as required

by Bankruptcy Rule 2014(a).

13

30.     Generally, it is Kirkland's policy to disclose entities in the capacity that they first appear in a conflicts search.  For example, if an entity already has been disclosed in this Declaration in one capacity (*e.g.*, a customer), and the entity appears in a subsequent conflicts search in a different capacity (*e.g.*, a vendor), Kirkland does not disclose the same entity again in supplemental declarations, unless the circumstances are such in the latter capacity that additional disclosure is required.

31.     From time to time, certain former partners of Kirkland are entitled to compensation for a limited period of time following their departure from the firm.

32.     From time to time, Kirkland has referred work to other professionals to be retained in these chapter 11 cases.  Likewise, certain such professionals have referred work to Kirkland.

33.     Certain insurance companies pay the legal bills of Kirkland clients.  Some of these insurance companies may be involved in these chapter 11 cases.   None of these insurance companies, however, are Kirkland clients as a result of the fact that they pay legal fees on behalf of Kirkland clients.

## Specific Disclosures

34.     As specifically set forth below and in the attached exhibits, Kirkland represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in ongoing matters unrelated to the Debtors and these chapter 11 cases.  None of the representations described herein are materially adverse to the interests of the Debtors' estates. Moreover, pursuant to section 327(c) of the Bankruptcy Code, Kirkland is not disqualified from acting as the Debtors' counsel merely because it represents certain of the Debtors' creditors, equity security holders, or other entities that may be parties in interest in matters unrelated to these chapter 11 cases.

14

A.      **Connections to Holders of Equity Interests in the Debtors.**

35.     As disclosed on **<u>Schedule 2</u>**, Kirkland currently represents, and in the past has represented, Oaktree Capital Management, L.P., The Canadian Pension Plan Investment Board, CION Ares Diversified Credit Fund, and/or certain of their affiliates (collectively, the "<u>Equity Holders</u>") on a variety of matters.  Kirkland has not represented, and will not represent, the Equity Holders in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  All current and prior Kirkland representations of the Equity Holders have been in matters unrelated to the Debtors or these chapter 11 cases.  I do not believe that Kirkland's current or prior representation of the Equity Holders precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

B.      **Connections to Officers and Directors.**

36.     As disclosed below and on **<u>Schedule 2</u>**, Kirkland currently represents, and in the past has represented, certain affiliates, subsidiaries and entities associated with the Debtors' current and recent former officers and directors.  I do not believe that Kirkland's current or prior representation of the affiliates, subsidiaries, and entities associated with certain officers and directors precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

37.     Ryan Esko and Matthew Kahn, directors of certain of the Debtors, have served, or may serve from time to time, in various management and/or director capacities of certain Kirkland clients or affiliates thereof.  I do not believe that Kirkland's current or prior representation of the clients for which Messrs. Esko or Kahn served in management and/or director capacities precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

15

**C.      Connections to Certain Financial Institutions.**

38.      As disclosed on **Schedule 2**, Kirkland currently represents, or in the past has represented, Oaktree Capital Management, L.P., The Canadian Pension Plan Investment Board, Albacore Capital LLC, Bank of America Securities LLC, Barclays Capital Inc., First Horizon National Corporation, JPMorgan Chase Bank, N.A., Paypal, Inc., The PNC Financial Services Group, Inc., TD Securities Inc., Trustmark, Wells Fargo Bank, N.A., CION Ares Diversified Credit Fund, Fidelity Investments, Gordon Brothers Brands, LLC, HG Vora Capital Management LLC, HSBC Holdings plc, UBS Asset Management Funds Limited, Whitebox Advisors LLC, Whitehorse Liquidity Partners, and/or certain of their affiliates (collectively, the "Certain Financial Institutions") on a variety of matters.   The Certain Financial Institutions or affiliates thereof comprise of one or more of the following: (a) a prepetition lender to the Debtors; (b) an entity with whom the Debtors have a banking or financial relationship; or (c) current or former agents under certain of the Debtors' credit facility agreements.   Kirkland's current and prior representations of the Certain Financial Institutions are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, the Certain Financial Institutions in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's current or prior representation of the Certain Financial Institutions precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**D.      Connections to Other Entities.**

39.      As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Constellation Energy Corp. and certain of its affiliates (collectively, "Constellation"), one of the Debtors' utility providers, in a variety of matters.   Kirkland's current and prior representations of Constellation are in matters unrelated to the Debtors and these chapter 11 cases.

16

Kirkland has not represented, and will not represent, Constellation in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's representation of Constellation precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

40.     As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, AXA REIM SGP and certain of its affiliates (collectively, "AXA"). Axa is an affiliate of one of the Debtors' insurance providers. Kirkland's current and prior representations of AXA are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, AXA in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's representation of AXA precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

41.     As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, certain of the Debtors' vendors, including KPG LLP, Kyndryl Inc., LivePerson LLC, Meta Platforms, Inc., and/or certain of their subsidiaries and affiliates (collectively, the "Contract Vendors") in a variety of matters. Kirkland's current and prior representations of the Contract Vendors are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, the Contract Vendors in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's representation of the Contract Vendors precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

42.     As disclosed on **Schedule 2**, Kirkland in the past has represented certain of the Debtors' benefits providers, including Cigna Health and Life Insurance Co., Quantum Health, Inc., and certain of their affiliates (collectively, "Benefits Providers") in a variety of matters. Kirkland's

current and prior representations of the Benefits Providers are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, the Benefits Providers in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's representation of the Benefits Providers precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

E.     **Other Chapter 11 Professionals.**

43.     As disclosed below and on **Schedule 2**, Kirkland currently represents, and in the past has represented, certain affiliates, subsidiaries, and entities associated with various professionals that have been retained, or that the Debtors seek to retain, in connection with these chapter 11 cases. Kirkland's current and prior representations of these professionals have been in matters unrelated to the Debtors or these chapter 11 cases. Kirkland has not represented, and will not represent, any such professionals in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's current or prior representation of these professionals precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

44.     On April 17, 2023, the Debtors were authorized to assume a consulting agreement with Gordon Brothers Retail Partners, LLC related to the sale of inventory.[12] As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Gordon Brothers Brands, LLC and certain of its affiliates (collectively, "Gordon Brothers") in a variety of matters. Kirkland's current and prior representations of Gordon Brothers are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, Gordon

---

[12]     *See Interim Order (I) Authorizing the Debtors to Assume and Perform Under the Consulting Agreement Related to the Sale of Inventory, (II) Approving Procedures for the Sale of Inventory, (III) Approving Modifications to Certain Customer Programs, and (IV) Granting Related Relief* [Docket No. 67].

18

Brothers in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's representation of Gordon Brothers precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

45.   Certain of the Debtors' lenders have retained B. Riley Financial, Inc.  As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, B. Riley FBR, Inc. and certain of its affiliates (collectively, "B. Riley") in a variety of matters.  Kirkland's current and prior representations of B. Riley are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, B. Riley in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's representation of B. Riley precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

46.   The Debtors' proposed bankruptcy co-counsel is Cole Schotz.  As disclosed on **Schedule 2**, Kirkland in the past has represented Cole Schotz in a variety of matters.  All of Kirkland's prior representations of Cole Schotz were unrelated to the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not represent, Cole Schotz in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases.  I do not believe that Kirkland's prior representation of Cole Schotz precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

47.   The Debtors' proposed investment banker and financial advisor is Houlihan Lokey Capital, Inc.  As disclosed on **Schedule 2**, Kirkland in the past has represented Houlihan Lokey EMEA LLP ("Houlihan") in a variety of matters.  Kirkland's prior representations of Houlihan were in matters unrelated to the Debtors or these chapter 11 cases.  Kirkland has not represented, and will not represent, Houlihan Lokey in connection with any matter in these chapter 11 cases

19

during the pendency of these chapter 11 cases. I do not believe that Kirkland's prior representation of Houlihan precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

48.    The Debtors' proposed tax consultant is Deloitte Tax LLP. As disclosed on **Schedule 2**, Kirkland currently represents, and in the past has represented, Deloitte LLP and certain of its affiliates (collectively, "Deloitte") in a variety of matters. Kirkland's current and prior representations of Deloitte are in matters unrelated to the Debtors and these chapter 11 cases. Kirkland has not represented, and will not represent, Deloitte in connection with any matter in these chapter 11 cases during the pendency of these chapter 11 cases. I do not believe that Kirkland's current or prior representation of Deloitte precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

**F.    Kirkland Attorney and Employee Investments.**

49.    From time to time, Kirkland partners, of counsel, associates, and employees personally invest in mutual funds, retirement funds, private equity funds, venture capital funds, hedge funds, and other types of investment funds (the "Investment Funds"), through which such individuals indirectly acquire an interest in debt or equity securities of many companies, one of which may be one of the Debtors, their creditors, or other parties in interest in these chapter 11 cases, often without Kirkland's knowledge. Each Kirkland person generally owns substantially less than one percent of such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. The Investment Fund is generally operated as a blind pool, meaning that when the Kirkland persons make an investment in the Investment Fund, he, she, or they do not

20

know what securities the blind pool Investment Fund will purchase or sell, and have no control over such purchases or sales.

50.     From time to time one or more Kirkland partners and of counsel voluntarily choose to form an entity (a "Passive-Intermediary Entity") to invest in one or more Investment Funds. Such Passive-Intermediary Entity is composed only of persons who were Kirkland partners and of counsel at the time of the Passive-Intermediary Entity's formation (although some may later become former Kirkland partners and of counsel). Participation in such a Passive-Intermediary Entity is wholly voluntary and only a portion of Kirkland's partners and of counsel choose to participate. The Passive-Intermediary Entity generally owns substantially less than one percent of any such Investment Fund, does not manage or otherwise control such Investment Fund, and has no influence over the Investment Fund's decision to buy, sell, or vote any particular security. Each Investment Fund in which a Passive-Intermediary Entity invests is operated as a blind pool, so that the Passive-Intermediary Entity does not know what securities the blind pool Investment Funds will purchase or sell, and has no control over such purchases or sales. And, indeed, the Passive-Intermediary Entity often arranges for statements and communications from certain Investment Funds to be sent solely to a blind administrator who edits out all information regarding the identity of the Investment Fund's underlying investments, so that the Passive-Intermediary Entity does not learn (even after the fact) the identity of the securities purchased, sold, or held by the Investment Fund. To the extent the Passive-Intermediary Entity is or becomes aware of the identity of the securities purchased, sold, or held by the Investment Funds ("Known Holdings"), such Known Holdings are submitted to Kirkland's conflict checking system.

51.     From time to time, Kirkland partners, of counsel, associates, and employees personally directly acquire a debt or equity security of a company which may be (or become) one

of the Debtors, their creditors, or other parties in interest in these chapter 11 cases. Kirkland has

a long-standing policy prohibiting attorneys and employees from using confidential information

that may come to their attention in the course of their work, so that all Kirkland attorneys and

employees are barred from trading in securities with respect to which they possess confidential

information.

**G.    Other Disclosures.**

52.    Finally, certain interrelationships exist among the Debtors. Nevertheless, the

Debtors have advised Kirkland that the Debtors' relationships to each other do not pose any

conflict of interest because of the general unity of interest among the Debtors. Insofar as I have

been able to ascertain, I know of no conflict of interest that would preclude Kirkland's joint

representation of the Debtors in these chapter 11 cases.

53.    The spouse of Kirkland partner Helen E. Witt, P.C. is a managing director of

JPMorgan Chase & Co., whose affiliate is a lender to the Debtors. Out of an abundance of caution,

Kirkland has instituted formal screening measures to screen Ms. Witt from all aspects of

Kirkland's representation of the Debtors. I do not believe that this connection precludes Kirkland

from meeting the disinterestedness standard under the Bankruptcy Code.

54.    Jonathan S. Henes, a former partner of Kirkland, is the CEO and principal of C

Street Advisory Group, LLC ("C Street"). Kirkland currently represents, and in the past has

represented, certain affiliates, subsidiaries, and entities associated with C. Street. C Street is

providing services to the Debtors in the ordinary course as a restructuring public relations advisor.

Mr. Henes did not work on the Debtors' cases while at Kirkland. Kirkland's current and prior

representations of C Street have been unrelated to the Debtors and these chapter 11 cases. I do not

22

believe that this connection precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

55.     The spouse of Kirkland associate Christopher Grady is employed by PNC Financial Services Group, Inc., whose affiliate is one of the Debtors' cash management banks.  I do not believe that this connection precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

56.     Reginald Brown, a Kirkland partner, is a board member of Blackstone Inc., an affiliate of one of the Debtors' landlords.  I do not believe that this connection precludes Kirkland from meeting the disinterestedness standard under the Bankruptcy Code.

57.     Furthermore, prior to joining Kirkland, certain Kirkland attorneys represented clients adverse to Kirkland's current and former restructuring clients.  Certain of these attorneys (the "Screened Kirkland Attorneys") will not perform work in connection with Kirkland's representation of the Debtors and will not have access to confidential information related to the representation.  Kirkland's formal ethical screen provides sufficient safeguards and procedures to prevent imputation of conflicts by isolating the Screened Kirkland Attorneys and protecting confidential information.

58.     Under Kirkland's screening procedures, Kirkland's conflicts department distributes a memorandum to all Kirkland attorneys and legal assistants directing them as follows: (a) not to discuss any aspects of Kirkland's representation of the Debtors with the Screened Kirkland Attorneys; (b) to conduct meetings, phone conferences, and other communications regarding Kirkland's representation of the Debtors in a manner that avoids contact with the Screened Kirkland Attorneys; (c) to take all measures necessary or appropriate to prevent access by the Screened Kirkland Attorneys to the files or other information related to Kirkland's representation

23

of the Debtors; and (d) to avoid contact between the Screened Kirkland Attorneys and all Kirkland personnel working on the representation of the Debtors unless there is a clear understanding that there will be no discussion of any aspects of Kirkland's representation of the Debtors. Furthermore, Kirkland already has implemented procedures to block the Screened Kirkland Attorneys from accessing files and documents related to the Debtors that are stored in Kirkland's electronic document managing system.

### Affirmative Statement of Disinterestedness

59.    Based on the conflicts search conducted to date and described herein, to the best of my knowledge and insofar as I have been able to ascertain, (a) Kirkland is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code, and does not hold or represent an interest adverse to the Debtors' estates and (b) Kirkland has no connection to the Debtors, their creditors, or other parties in interest, except as may be disclosed herein.


*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated:  May 16, 2023                    Respectfully submitted,

                                        _/s/ Christopher T. Greco_
                                        Christopher T. Greco
                                        as President of Christopher T. Greco, P.C., as
                                        Partner of Kirkland & Ellis LLP; and as Partner
                                        of Kirkland & Ellis International LLP

25

## Schedule 1

The following lists contain the names of reviewed entities as described more fully in the *Declaration of Christopher T. Greco in Support of the Debtors' Application for the Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP and Kirkland & Ellis International LLP as Attorneys for the Debtors and Debtors in Possession Effective as of April 17, 2023* (the "Greco Declaration").[1]   Where the names of the entities reviewed are incomplete or ambiguous, the scope of the search was intentionally broad and inclusive, and Kirkland & Ellis LLP and Kirkland & Ellis International LLP reviewed each entity in its records, as more fully described in the Greco Declaration, matching the incomplete or ambiguous name.

---

[1]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Greco Declaration.

# SCHEDULE 1

### List of Schedules

| Schedule | Category |
|---|---|
| 1(a) | Debtors and Debtor Affiliates |
| 1(b) | Current Directors and Officers |
| 1(c) | Former Directors and Officers |
| 1(d) | Bankruptcy Judges |
| 1(e) | Banks |
| 1(f) | Benefits Providers |
| 1(g) | Significant Equity Holders |
| 1(h) | Insurance - Surety Bonds |
| 1(i) | Landlords |
| 1(j) | Lenders |
| 1(k) | Letters of Credit |
| 1(l) | Litigation Parties |
| 1(m) | Ordinary Course Professionals |
| 1(n) | Restructuring Professionals |
| 1(o) | Significant Vendors |
| 1(p) | Taxing Authorities |
| 1(q) | U.S. Trustee Personnel and Bankruptcy Judges |
| 1(r) | Utilities |

# SCHEDULE 1(a)

### 1(a)    Debtors and Debtor Affiliates

Aligned for the Frontline LLC
Blueprint Registry LLC
Bridge Holding Ltd., The
David's Bridal LLC
David's Bridal UK Ltd.
DBI Holdco II Inc.
DBI Investors Inc.
DBI Midco Inc.
Executive Management Ltd.
Fillberg Ltd.
Maxtel Ltd.
Multihulls Trading Ltd.
Pretty Fashions Inc.
Wingreat Ltd.

# SCHEDULE 1(b)

## Current Directors and Officers

Aloise, David
Cooper, Robert
Esko, Ryan
Fields, Venita
Hennesey, Karen
Kahn, Matthew
Kinkade, Lori
Kuster, Jeff
Lockyer, Charles
Marcum, James
Moore, David
Pope, Christine
Richter, Scott
Stern, Illana

# SCHEDULE 1(c)

## **Former Directors and Officers**

Anthony, Troy
Auletta, Elio
Barton, Christine
Crystal, Elizabeth
Griffith, Scott R.
Leitgeb, Terri
Rice, Katherine
Tien, Bing
Walker, Gary
Warzel, Jeffrey

# SCHEDULE 1(d)

## **<u>Bankruptcy Judges</u>**

Altenburg, Andrew B., Jr.
Ferguson, Kathryn C.
Gambardella, Rosemary
Gravelle, Christine M.
Kaplan, Michael B.
Meisel, Stacey L.
Papalia, Vicent F.
Poslusny, Jerrold N., Jr.
Sherwood, John K.

# SCHEDULE 1(e)

## **Banks**

Bank Champaign
Bank of America NA
Barclays
Central Pacific Bank
Chemung Canal Bank
Citizens Bank
Fifth Third Bank
First Citizens Bank
First Horizon Bank
Huntington National Bank
JPMorgan Chase Bank
Key Bank
Paypal
PNC Bank
Regions Bank
Rockland Trust
Stripe
TD Canada Trust
Trustmark National Bank
US Bank
Wells Fargo & Co.
Whitney Bank

# SCHEDULE 1(f)

## **Benefits Providers**

24 PetWatch Insurance Programs
Carebridge Corp.
CIGNA
CirrusMD Inc.
First Stop Health LLC
Ginger.io of CA Medical PC
Hawaii Medical SVC Association
Hinge Health Inc.
Lincoln Life Assurance Co.
Lincoln National Life Insurance Co.
Livongo Health Inc.
Mercer
Meritain Health Inc.
Omada Health Inc.
OptumRX PBM of IL Inc.
Quantum Health Inc.
WexHealth

# SCHEDULE 1(g)

## Significant Equity Holders

Arbour Lane – TX LP
Canada Pension Plan Investment Board, The
Cion
Eaton Vance
Edgepoint
Oaktree
Petrus Asset Management
Rimrock

# SCHEDULE 1(h)

## Insurance - Surety Bonds

ACE American Insurance Co.
AIG
AIG Specialty Insurance
AIG Specialty Insurance Co.
America Insurance Corp.
Ascot Insurance Co.
AXA Insurance UK plc
Axis Excess Insurance
Axis Insurance Co.
AXIS Surplus Insurance Co.
Beazley Insurance Co. Inc.
Berkley Insurance Co.
Berkley Professional Liability
Canada, Government of, Border Services
    Agency
Chattanooga, City of (TN), Electric Power
    Board
Chubb
Chubb ACE American Insurance Co.
Chubb Group of Insurance Cos.
CNA Insurance
Continental Casualty Co.
Elite Insurance Corp.
Entergy Louisiana LLC
Everest EZ Excess
Everest National Insurance Co.
Fireman's Fund Insurance Co.
Florida Power & Light Co.
Great American Professional Risk Insurance
    Services Inc.
Hartford Accident & Indemnity Co.
Hartford Financial
Hartford Fire Insurance Co.
Hiscox Insurance Co.
Hudson Insurance Co.
Illinois Union Insurance Co.
Knoxville, City of (TN), Utilities Board
Liberty Insurance Underwriters Inc.
Liberty Mutual Insurance Co.
Lloyd's of London
National Union Fire Insurance Co. of Pittsburgh
    (PA)

Navigators
Nevada, State of, Department of Taxation
North Dakota, State of
PG&E
Public Service Co. of Oklahoma
Safeco Insurance Co. of America
Southern California Edison Co.
Starr Marine (CAN)
Starr Marine (UK)
Starr Marine (US)
StarStone Specialty Insurance Co.
Steadfast Insurance Co.
Tampa Electric Co.
Travelers Property Casualty Co.
Twin City Fire Insurance Co.
United States Fire Insurance Co.
United States, Government of the, Department
    of Homeland Security, Bureau of Customs
    & Border Protection
United States, Government of the, Department
    of Homeland Security, Customs
XL Specialty Insurance Co.

## SCHEDULE 1(i)

### Landlords

1000 South Vermont LLC
10345 Magnolia Ave LLC
11 Point Capital LLC
1210 Weible LLC
1276 Bald Hill Rd. LLC
1997-0506 Cava Ltd.
3133 Erie Boulevard Associates LLC
3413 Tittabawassee Rd Leasing
3500 48th Street Owner LLC
4212 West Wendover Avenue LLC
4545 Kennedy LLC
610 & San Felipe Inc.
84 South Retail Center LLC
Acadia Merrillville Realty LP
ACS Adams Dairy Landing MO LLC
Agree LP
All Centers LP
Almonesson Associates II
Ambra Investments LLC
ARC CTCHRNC001 LLC
ARC SSSDLLA001 LLC
ARD MacArthur LLC
ARG CRHAGMD001 LLC
ARG LPLAFIN001 LLC
ARG SPSPRIL001 LLC
Arnot Associates II LLC
BAM River Valley LP
Barrywoods Holdings LLC
Bassett Place Real Estate Co. LLC
BBP Partners LLC
Belden Park Delaware LLC
Beltway Crossings LLC
Bentall Green Oak Canada LP
Bershon LV Two LLC
Bethel Properties LLC
Billou Corp.
BMLS Investments LLC
Bodester LLC
Bonefide Estates Inc.
Boone Interstate Development

Braehead Glasgow Ltd.
Braehead Park Investments Ltd.
Brixmor
Brixton Real Estate Investments LLC - Pavilion
   Series
Broadway & Pearl Associates LLC
Brookfield Properties
Buckhead Place LLC
Burlington Interstate Center LLC
BVA Avenue LLC
Cafaro
Calloway REIT
CalProp Management Co.
Carillon Square I LLC
CBL
CDP4 Peoples Crossing
Central Valley Associates
CFC Phase II LLC
Coliseum Crossing Associates LLC
College Station Uniprop LLC
Columbus Park Crossing Southwest LLC
Columbus Village Shopping Center
Commons Reno LLC, The
Core Southside
CREA/PPC Long Beach Towne Center PO LLC
Cross County Owner LLC
CSHV Woodlands LP
CSM Investors Inc.
Dartmouth Crossing Master LP
Davis Family LP
DB Taylor LLC
DDRTC Marketplace at Mill Creek LLC
Del Amo Fashion Center Operating Co. LLC
Delaware Cumberland Avenue Plaza LLC
Derito Walking Stick South LLC
Dolan & Co. LLC
Donahue Schriber Realty Group LP
DT Ahwatukee Foothills LLC
East Chase Properties LLC
Easton Gateway LLC

El Dorado Pad 10 LP
Elite Vision Investments LLC
Emser International LLC
Erving Ridge Consulting & Development LLC
Fayette Town Center LLC
Fayner Trust, The
FB Festival Center LLC
Federal Realty Investment Trust
Forsons Investments LLC
FP II SC LLC
FPIP I Ltd.
FR Pembroke Gardens LLC
Freehold Investments LLC
G&I X CenterPoint LLC
Gateway Crossing SC LLC
Gateway Pinole Vista LLC
GGF1 North Olmstead 2016 LLC
GP Retail I LLC
Greenwood Marketplace II LLC
GSMS 2013-GCJ14 Plaza Drive LLC
GWP-Northridge Grove LP
Hamilton Commons TEI Equities LLC
Harsch Investment Corp.
Hauppauge Properties LLC
HC Atlantic Development LP
Hendon FGV Center LLC
Henesta Group LLC
Henry Real Estate LP
Holderfield Properties Inc.
HS CompUSA Center LLC
Hulen Park Associates
ICA BFC Venture LLC
ICE Holdings LLC
Inland Commercial Real Estate
IRC Retail Centers Management Inc.
IVT Renaissance Center Durham I LLC
Jennum Wellington Properties Inc.
JPMCC 2005-LDP2 Dayton
Kancov Investment LP
Kennewick Associates LP
Kevorkian, Joan
Kimco
Kite Realty Corp.
Kite Realty Group
Lafayette Furniture Co. Inc.
Layton Antelope LLC

LBX Evergreen TH LLC
LBX Harbison TH LLC
LBX North Rivers LLC
Levin Properties LP
Limestone Millenia Plaza LLC
Lokre Development Co.
LRC Northway Mall Acquisitions LLC
Lund Co.
M.J. Peterson Co.
Madison Place LLC
Madison-Flint Properties LLC
Magnolia Commons SC LLC
Mallside Development Corp.
Manana-CDIT LLC
Market at Epps Bridge LLC, The
Market Pointe II LLC
Market Town Center Owner LLC
Marquette, Madison
Mattone Group Management LLC
Mayfaire Town Center LP
May-Sun Co.
MCP VOA I & III LLC
MDG Strategic Acquisition LLC
Mesomorph LLC
Metro Pointe Retail Associates II
Metroplex West Associates LP
Mishorim Gold Jacksonville LP
MPH Associates LLC
MT San Antonio I LLC
NaperW LLC
North Academy III LLC
Northeast Dallas Mall LLC
Northern Valley Indian Health Inc.
Northway Mall Properties LLC
NV LLC
Oakdale Village LLC
Oakwood Business Park LLC
Oneida I LLC
Ontario Gateway SJT Retail XVII LLC
Orange Grove Utilities Inc.
Otay Main Street LLC
Ottawa Train Yards Inc.
Oval Properties 1901 Ltd.
Pagosa Partners III Ltd.
Palladian - Valley View Blvd LLC
PAPF Dimond LLC

Park Pointe Plaza Associates
PDN Retail Center LP
Peoria Rental Properties LLC
PGP Fayetteville LLC
Pierre Bossier Mall Realty Holding LLC
PK Clearwater Springs LLC
Plaza at Burr Corners LLC, The
Post Hill LP
Potomac Festival LLC
PR North Dartmouth LLC
PREP Aurora Real Estate LLC
Preston Valley View Ltd.
Principle Life Insurance Co.
R46 Realty Associates LP
Ramco Gershenson Properties LP
Ramco Jacksonville LLC
Ravines Strongsville I LLC
RCG-Monroeville LLC
RGR Star Plaza LP
Ridgeline Inc.
RioCan Real Estate Investment Trust
Riverchase CC LP
Robinson Station LP
ROF Macon LLC
Roko Savannah (MGT) LLC
RPAI Southwest Management LLC
Rushmore Crossing Associates LLC
Sam's Property LLC
Sansone Group LLC
Sawgrass Mills LP
Schulte 2 Sycamore LLC
SCM FFA Fargo 1500 LLC
Seritage SRC Finance LLC
Shops at Abilene LP
Shops at Collins Square LLC, The
Shops of Tupelo LLC, The
Shops on Emerald LLC
Simon
Site Centers
Skyland Legacy LLC
SM Eastland Mall LLC
Solar Holdings LLC
Sorich & Lasher
South Coast Management LLC
South Edmonton Common
Southtown Plaza Realty LLC

Spirit Realty
Spring Creek Improvements LLC
Springfield Plaza LP
Springfield Square Central LP
SSI Northside LLC
Stratford City Shopping Centre No. 2
Summerhill Square LLC
Sunil Madison LLC
SunMark Property LLC
Sunrise Promenade Associates
SUSO 5 Riverdale LP
SVF University Westwood LLC
TCB Elston LLC
TCSC LLC
Telsec Property Corp.
TKG Management
TMC Eastgate LLC
Transandina Holdings LLC
Transform Leasco
Truss Greenwood IN LLC
Tyler Broadway Centennial LP
United Hampshire US Holdings LLC
Urban Edge Properties
Urstadt Biddle
USPG Portfolio Five LLC
Vestar Alderwood Parkway LLC
Villa View Ltd.
VW Chenal Commons LLC
Walart Management Co.
Wallet, George L.
Washington Prime
Waterford Park North Associates LLC
WCH LLC
West Broad Marketplace
Westfield Mission Valley Square LP
Westridge Daniels LLC
WH (Woodbridge) Ltd.
WIL-CPT Arlington Highlands 1 LP
William Roth Co.
ZL Properties LLC

# SCHEDULE 1(j)

### **Lenders**

Albacore Capital LLC
Alter Domus (US) LLC
Althilon Capital Corp. LLC
Bank of America NA
Boston Management & Research
Cantor Fitzgerald Securities
CION Investment Corp.
Courage Credit Opportunities Fund
Cowen Special Investments LLC
CPPIB Credit Investments III Inc.
Cross Sound Management LLC
Eaton Vance Management
Edgepoint Investment Group
Ellington CLO Management LLC
Fidelity
Gordon Brothers Group LLC
HG Vora Capital Management
HSBC Bank plc
JPMorgan Investment Management
Merced Partners LP
Nomura Corporate Research & Asset Management
Oaktree Capital Management LP
Petrus Yield Opportunity Fund
Rimrock Capital Management LLC
Trimaran Capital Partners
UBS AG Stamford Branch
Variable Insurance Products Fund
Venture XX CLO Ltd.
Whitebox Asymmetric Partners LP
Whitebox Multi-Strategy Investment Group
WhiteHorse
WhiteHorse VII Ltd.

# SCHEDULE 1(k)

## **Letters of Credit**

CIT Group Commercial Services
Constellation NewEnergy Inc.
Elavon Inc.
Hanover Estates LLC
Hartford Fire Insurance Co.
Liberty Mutual Insurance Co.
Travelers Indemnity Co.

# SCHEDULE 1(l)

## Litigation Parties

Andrus Intellectual Property Law LLP
Beverly Hills Trial Attorneys PC
California, State of
Capstone Law APC
Dapeer Law PA
Hansra Cardenas LLP
Ironside Law Firm
Locket IP LLC
Morgan & Morgan PA
Tianhai Lace USA Inc.
Victoria's Secret Stores Brand Management LLC

# SCHEDULE 1(m)

## Ordinary Course Professionals

Alvarado Tax & Business Advisors LLC
Berkeley Research Group LLC
C Street Advisory Group LLC
Cole Schotz PC
Daniel Watney LLP
Deloitte Tax LLP
Douglas Allen Ltd.
Gartner Inc.
Global Tax Management Inc.
Goodman Jones LLP
Gowling WLG (Canada) LLP
Gunster Yoakley & Stewart PA
Gurstel Law Firm PC
Houlihan Lokey Capital Inc.
Jackson Lewis PC
Matt Scott Law Firm PLLC
Michael Best & Friedrich LLP
Morgan Lewis & Bockius LLP
Norton Rose Fulbright US LLP
One Edje LLC
Peake Law Group PC
Reppert Kelly LLC
Taft Stettinius & Hollister LLP
TaxMatrix Technologies LLC
Taylor Wessing LLP
Visionary Financial Solutions Inc.
Weil Gotshal & Manges LLP
Wyatt Tarrant & Combs LLP

# SCHEDULE 1(n)

## <u>Restructuring Professionals</u>

B. Riley Financial Inc.
Deloitte Touche Tohmatsu Ltd.
Greenberg Traurig LLP
Katten Muchin Rosenman LLP
Lowenstein Sandler LLP
Morgan Lewis & Bockius LLP
Omni Agent Solutions
Osler Hoskin & Harcourt LLP
Riemer & Braunstein LLP
Weil Gotshal & Manges LLP

# SCHEDULE 1(o)

## **Significant Vendors**

[24]7.Ai Inc.
Adobe Systems Inc.
Affirm Inc.
Amazon Web Services Inc.
American Litho Inc.
Arthur J. Gallagher & Co.
Attentive Mobile Inc.
Bliss Designs Inc.
Blueberry Technologies LLC
BrandPoint
Bridal Veil Co. Inc.
Broadspire Services Inc.
Bunzl Retail
Ceridian
CIT Group Commercial Services
Computer Design & Integration LLC
Ecova
FacilitySource LLC
FlyteVu Agency LLC
France Lab Inc.
Google Inc.
Hartford Financial Service
Haworth Marketing + Media LLC
Icon International Inc.
IntelliSource Inc.
January Digital LLC
JMJ Builders LLC
KPMG LLC
Kyndryl Inc.
LivePerson
Manhattan Associates
Meta Platforms Inc.
Microsoft Corp.
Milberg Factors Inc.
Moschini Productions Inc.
Paypool LLC
Pinterest Inc.
R&M Richards
Rhombus Services
RingCentral Inc.
Rosenthal & Rosenthal Inc.
Royal Cyber Inc.

Specialty Freight Services Inc.
Steven Madden Ltd.
TC Millwork Inc.
Teksystems Inc.
Unique Structures LLC
United Parcel Service
Unlimited Residential & Commercial
Construction LLC
UPS Canada
UPS Supply Chain Solutions Inc.

# SCHEDULE 1(p)

## Government & Tax Authorities

Ashwaubenon, Village of (WI)
Baton Rouge, City of (LA)
Birmingham, City of (AL) City Council
Canada, Government of, Ministry of Finance
Canada, Government of, Revenue Agency
East Brunswick, City of (NJ), Fire Prevention
Edmonton, City of (Canada)
Elite Revenue Solutions LLC
Hamilton, Township of (NJ)
Henrico, County of (VA)
Illinois Wholesale Cash
Kentucky, Commonwealth of, State Treasurer
Langley, City of (VA)
Lopinto, Joseph, Sheriff
Los Angeles, County of (CA), Agricultural Commission
Manitoba, Province of (Canada), Department of Finance
Maple Shade, Township of (NJ)
Marksville, City of (LA)
Massachusetts, Commonwealth of
McAllen, City of (TX), Police Department
Meridian, Charter Township (MI)
Minnesota, State of, Revenue
Monroeville, Municipality of (PA)
Nevada, State of, Department of Taxation
Nevada, State of, Treasurers' Office, Unclaimed Property
New Hampshire, State of, Department of Revenue Administration
New Jersey, State of
New York, City of (NY), Department of Finance
Newham, Borough of (London)
North Carolina, State of, Department of Revenue
North Dakota, State of, Workforce Safety & Insurance
Oregon, State of, Department of Revenue
Pennsylvania, Commonwealth of
Robinson, Township of (PA)
San Diego, City of (CA), Recorder/Countyclerk
South Carolina, State of, Department of Revenue
Springfield, Township of (PA)
Tennesse, State of, Department of Revenue
United States, Government of the, Department of Homeland Security, Customs & Border
    Protection
Washington, State of, Department of Labor & Industries
Watford, Borough Council of (UK)

# SCHEDULE 1(q)

## US Trustee Personnel and Bankruptcy Judges

Alfaro, Adela
Ardelean, Kirsten K.
Arendas, Francyne D.
Artis, Michael
Bielskie, Lauren
Clausen, Joanne E.
D'Auria, Peter J.
Dugan, Dianne P.
Fuentes, Neidy
Gerardi, David
Green, Tia
Hildebrandt, Martha
Kern, Joseph C.
Kropiewnicki, Daniel C.
McGee, Maggie
Nikolinos, Alexandra
Oppelt, Tina L.
Ortiz-Ng, Angeliza
Schneider, Robert J., Jr.
Shaarawy, Adam
Sponder, Jeffrey
Steele, Fran B.
Stives, James
Vara, Andrew R.
Ziemer, William J.

# SCHEDULE 1(r)

## **Utilities**

AES Indiana
AES Ohio Generation LLC
Alabama Power Co.
Alectra Utilities Corp.
Alliant Energy Corp.
Altamonte Springs, City of (FL)
Ameren Illinois Co.
Ameren Missouri
American Electric Power Co. Inc.
Appalachian Power Co.
Aqua Pennsylvania Inc.
AT&T Inc.
AT&T Mobility LLC
Atlantic City Electric Co.
Atmos Energy Corp.
Austin, City of (TX)
Avista Utilities Inc.
Baltimore Gas & Electric Co.
Benton Public Utilities District (WA)
Black Hills Energy
Bowling Green Municipal Utilities
BrightRidge
Brightspeed
British Columbia Hydro & Power Authority
British Telecom
Buford, City of (GA)
Burbank Water and Power
Business Stream Ltd.
Cascade Natural Gas Corp.
Castle Water Ltd.
CenterPoint Energy Inc.
CenterPoint Energy Minnegasco
Central Georgia EMC
Central Maine Power Co.
Chattanooga Gas Co.
Chugach Electric Association Inc.
Citizens Energy Group
City Utilities of Springfield (MO)
City Water & Light
City Water Light & Power, Springfield IL
Cleco Power LLC
Cobb EMC

College Station Utilities (TX)
Colorado Springs Utilities (CO)
Columbia Gas of Kentucky Inc.
Columbia Gas of Maryland Inc.
Columbia Gas of Ohio Inc.
Columbia Gas of Pennsylvania Inc.
Columbia, City of (MO)
ComEd
ComfortSystems, a division of the City of
    Duluth Public Works & Utilies Dept.
ComTech 21
Con Edison
Connecticut Natural Gas Corp. (CNG)
Consolidated Communications Inc.
Constellation NewEnergy Inc.
Consumers Energy Co.
CoServ Gas Ltd.
CPS Energy
Danvers, Town of (MA), Electric Division
Delmarva Power & Light Co.
Direct Energy Regulated Services
Dixie Electric Cooperative Inc.
Dominion Energy Inc.
Dominion Energy North Carolina
Dominion Energy Ohio
Dominion Energy South Carolina
Dominion VA Power
DTE Energy Co.
Duke Energy Corp.
Duquesne Light Co.
Dynegy Energy Services LLC
East Brunswick Water/Sewer Utilities
Eastward Energy Inc.
Edge Communications LLC
El Paso Electric Co.
Enbridge Gas Inc.
ENMAX Corp.
Enstar
Entergy Arkansas Inc.
Entergy Gulf States LA LLC
Entergy Louisiana Inc.
Entergy Mississippi Inc.

Entergy Texas Inc.

EPB Ltd.

EPCOR Inc.

Eugene Water & Electric Board, The (EWEB)

Evergy

Evergy Kansas Central Inc.

Eversource Energy

Federal Realty Investment Trust

Festival at Sawmill Centre

Florida Power & Light Co.

Fort Collins, City of (CO), Utilities

FortisBC-Natural Gas

Gainesville Regional Utilities

Georgia Power

Grandbridge Energy Inc.

Granite Telecommunications Corp.

Green Mountain Power Corp.

Greenville Utilities Commission, NC

Hawaiian Electric

Hempstead, Town of (NY), Department of Water

Huntsville Utilities, AL

Hydro Ottawa

Idaho Power

Illuminating Co., The

Indiana Michigan Power

Intermountain Gas Co.

JEA

Jersey Central Power & Light

JRA HHF Venture LLC

Kansas Gas Service

Kentucky Utilities Co.

KUB-Knoxville Utilities Board

Lafayette Utilities Systems (LUS)

LG&E - Louisville Gas & Electric

Liberty Utilities

Liberty Utilities Georgia

Lincoln Electric System

London Hydro

Los Angeles, City of (CA), Department of Water

Lubbock, City of (TX), Utilities

Lumen Technologies

Madison Gas & Electric, WI

Manitoba Hydro

Memphis Light, Gas & Water Division

Met-Ed

Metropolitan Utilities District

MidAmerican Energy Co.

Middle Tennessee Electric Membership

Minnesota Energy Resources

Minnesota Power

Mishawaka, City of (IN)

Modesto Irrigation District

Montana-Dakota Utilities Co.

Mountaineer Gas

MTS Communications

Naperville, City of (IL)

Nashville Electric Service

National Fuel Gas Co.

National Grid plc

New Jersey Natural Gas Co.

New Mexico Gas Co.

New York State Electric & Gas Corp.

Nicor Gas

Niles, City of (OH)

North Attleborough, City of (MA), Electric Department

North Shore Gas Co.

Northern Indiana Public Service Co.

NorthWestern Energy Development LLC

Nova Scotia Power Inc.

NOVEC

NV Energy Inc.

NW Natural

Ohio Edison

Oklahoma Gas & Electric Service

Oklahoma Natural Gas Co.

Omaha Public Power District (NE)

Orange & Rockland Utilities Inc.

Orlando Utilities Commission

Pacific Gas & Electric Co.

Pacific Power-Rocky Mountain Power

Pacific Telemanagement Services

Paducah Power System

Palm Beach, County of (FL), Water Utilities Department

Pearl River Valley EPA

PECO Energy Co.

Penelec

Pennsylvania American Water

Pensacola, City of (FL)

Peoples Gas
Piedmont Natural Gas
Pineville Electric & Telephone
Portland General Electric Co.
Potomac Edison
Potomac Electric Power Co.
PPL Electric Utilities
PSEG Long Island
Public Service Electric & Gas Co.
Puget Sound Energy
Rhode Island Energy
Richmond, City of (VA)
Riverside, City of (CA), Public Utilities
Roanoke Gas Co.
Rochester Gas & Electric
Rochester, City of (MN), Public Utilities
Rogers Wireless
Roseville, City of (CA)
Sacramento Municipal Utility District (CA)
Salt River Project Agricultural Improvement &
    Power District (AZ)
San Diego Gas & Electric Co.
Santa Clara, City of (CA)
Scana Energy
Scottish & Southern Energy Power Distribution
    Ltd.
Shell Energy UK Ltd.
Snohomish County Public Utility District (WA)
South Jersey Gas Co.
Southern California Edison Co.
Southern California Gas Co.
Southern Connecticut Gas Co., The
Southern Maryland Electric Cooperative Inc.
Southwest Gas Holdings Inc.
Southwestern Bell Inc.
Southwestern Electric Power Co.
Spire Inc.
Springfield Plaza LLC
Stratford Utilities Ltd.
Summit Utilities Arkansas Inc.
Sunrise, City of (FL)
SVF University Westwood LLC
Tacoma, City of (WA), Public Utilities
Tallahassee, City of (FL)
Tampa, City of (FL), Utilities
TDS Telecom Service LLC

Teco Tampa Electric Co.
Texas Gas Service Co. Inc.
T-Mobile Ltd.
Toledo Edison Co., The
Tombigbee Electric Power Association
Tonawanda, Town of (NY)
Toronto Hydro-Electric System Ltd.
Tucson Electric Power Co.
UGI Utilities Inc.
United Illuminating Co.
Unitil Corp.
Velocity Accounts Receivable
Veolia Water New Jersey
Verizon Business Global LLC
Verizon Communications Inc.
Verizon Wireless Services LLC
Vermont Gas Systems Inc.
Virginia Natural Gas Inc.
Washington Gas Resources Corp.
WaterOne
We Energies Foundation
Whitehall Township Authority (PA)
Wisconsin Public Service Corp.
Withlacoochee River Electric Cooperative Inc.
Wright-Hennepin Cooperative Electric
Xcel Energy Inc

# SCHEDULE 2

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| 3413 Tittabawassee Rd Leasing | Bilal Khan | Former |
| | Blackstone Advisors India Pvt. Ltd. | Current |
| | Blackstone Alternative Asset Management LP | Closed |
| | Blackstone Alternative Credit Advisors LP | Current |
| | Blackstone Alternative Solutions LLC | Closed |
| | Blackstone Asia | Current |
| | Blackstone Core Equity Partners (Cayman) L.P. | Closed |
| | Blackstone Energy Partners | Former |
| | Blackstone Family Real Estate Partnership (Offshore) VIISMD L.P. | Closed |
| | Blackstone Family Real Estate Partnership Europe IV-SMD L.P. | Closed |
| | Blackstone Group International Partners LLP, The | Closed |
| | Blackstone Group, The | Former |
| | Blackstone Growth LP | Current |
| | Blackstone Inc. | Current |
| | Blackstone Infrastructure Partners LP | Current |
| | Blackstone ISG-I Advisors LLC | Closed |
| | Blackstone ISG-II Advisors LLC | Closed |
| | Blackstone Life Sciences Advisors LLC | Current |
| | Blackstone Management Partners LLC | Current |
| | Blackstone Mortgage Trust Inc. | Current |
| | Blackstone Property Partners Europe Holdings SARL | Current |
| | Blackstone Property Partners LP | Current |
| | Blackstone Real Estate Advisors | Closed |
| | Blackstone Real Estate Advisors LP | Closed |
| | Blackstone Real Estate Holdings (Offshore) VII-NQ L.P. | Closed |
| | Blackstone Real Estate Holdings (Offshore) Vll-NQ - ESC L.P. | Closed |

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Blackstone Real Estate Holdings Europe IV-NQ ESC L.P. | Closed |
| | Blackstone Real Estate Income Trust Inc. | Current |
| | Blackstone Real Estate Investment Trust | Current |
| | Blackstone Real Estate Partners | Current |
| | Blackstone Real Estate Partners (Offshore) Vll.F-NQ L.P. | Closed |
| | Blackstone Real Estate Partners (Offshore) Vll.TE.1-8-NQ L.P. | Closed |
| | Blackstone Real Estate Partners (Offshore) Vll-NQ L.P. | Closed |
| | Blackstone Real Estate Partners Europe IV-NQ L.P. | Closed |
| | Blackstone Real Estate Partners Europe VII | Current |
| | Blackstone Real Estate Partners Limited | Closed |
| | Blackstone Singapore Pte. Ltd. | Current |
| | Blackstone Strategic Capital Holdings LP | Current |
| | Blackstone Strategic Opportunity Fund | Current |
| | Blackstone Strategic Partners | Former |
| | Blackstone Tactical Opportunities Advisors LLC | Current |
| | Blackstone Tactical Opportunities Fund LP | Current |
| | BPP Parker Towers Property Owner LLC | Current |
| | BRE Atlas Property Owner LLC | Current |
| | BRE Newton Hotels Property Owner LLC | Current |
| | BRE Polygon Property Owner LLC | Current |
| | BRE SH Brisbane Owner LLC | Current |
| | BRE SSP Property Owner LLC | Current |
| | BRE SSP Thousand Oaks LLC | Current |
| | BX CQP Target Holdco LLC | Current |
| | Clarus Ventures LLC | Current |
| | David I. Foley | Current |

2

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | GSO Capital Partners | Closed |
| | GSO Capital Partners LP | Closed |
| | Khan, Bilal | Current |
| | Kush Patel | Current |
| | Prakash A. Melwani | Current |
| | Strategic Partners Fund Solutions | Closed |
| | The Blackstone Group International Partners LLP | Current |
| | Vikram Suresh | Current |
| AES Indiana<br><br>AES Ohio Generation LLC | The AES Clean Energy Development, LLC | Current |
| AIG<br>AIG Specialty Insurance<br><br>AIG Specialty Insurance Co.<br>National Union Fire Insurance Co. of Pittsburgh (PA) | AIG DECO Fund I LP<br>National Union Fire Insurance Company of Pittsburgh, PA | Current<br>Current |
| Albacore Capital LLC | Albacore Capital LLP | Current |
| Amazon Web Services Inc. | Zoox Labs, Inc. | Current |
| Ascot Group Ltd.<br>Canada Pension Plan Investment Board, The<br>CPPIB Credit Investments III Inc. | Canada Pension Plan Investment Board<br>CPP Investment Board<br><br>CPPB Canada Inc.<br>CPPIB Asia Inc.<br>CPPIB Canada Inc.<br>LoanCore Capital, LLC | Current<br>Current<br><br>Closed<br>Current<br>Current<br>Current |
| AT&T Inc.<br>AT&T Mobility LLC<br>Southwestern Bell Inc. | AT&T Corp.<br>AT&T Inc.<br>AT&T Services, Inc.<br>Be Sunshine, LLC<br>Comcast Cable Communications Management LLC<br>DIRECTV, LLC<br>Illinois Bell Telephone Co. LLC | Current<br>Current<br>Current<br>Current<br>Closed<br><br>Former<br>Current |
| Atlantic City Electric Co.<br>Baltimore Gas & Electric Co.<br>ComEd | Commonwealth Edison Co.<br>Exelon Corporation<br>William A. Von Hoene, Jr. | Closed<br>Former<br>Current |

3

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Delmarva Power & Light Co. | | |
| AXA Insurance UK plc | AXA Real Estate Investment Managers UK Ltd. | Former |
| | AXA REIM SGP | Current |
| | XL Global Services, Inc. | Closed |
| B. Riley Financial Inc. | B. Riley FBR, Inc. | Current |
| | B. Riley Real Estate LLC | Current |
| Bank of America NA | Banc of America Securities LLC | Current |
| | Bank of America Corp. | Current |
| | Bank of America Merrill Lynch | Closed |
| | Bank of America Securities Ltd. | Former |
| | Benjamin Klein | Current |
| | BofA Securities Inc. | Current |
| | Graham Mandl | Current |
| | Merrill Lynch (Asia Pacific) Limited | Closed |
| Barclays | Barclays Capital Inc. | Current |
| | Barclays Securities Inc. | Current |
| BBP Partners LLC | BPP ST Owner LLC | Current |
| Brookfield Properties | BPR REIT Services LLC | Current |
| Oaktree | Brookfield Asset Management Inc. | Closed |
| Oaktree Capital Management LP | Brookfield Asset Management, LLC | Current |
| | Brookfield Business Partners LP | Closed |
| | Brookfield Capital Partners Ltd. | Closed |
| | Brookfield Infrastructure Debt Fund II LP | Current |
| | Brookfield Properties Development LLC | Current |
| | Brookfield Renewable Partners LP | Current |
| | Brookfield Special Investments LLC | Current |
| | GFI Energy Group of Oaktree Capital Management | Current |
| | Jordon Kruse | Current |
| | Matthew Wilson | Current |
| | Oaktree Acquisition Corp. II | Current |
| | Oaktree ATI Investors LP | Current |
| | Oaktree Capital Management LP | Current |
| | Oaktree Lending Partners Corporation | Current |

4

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Oaktree Maritime Finance Holdings XI Ltd. | Closed |
| | Oaktree Maritime Finance II, LLC | Closed |
| | Oaktree Middle-Market Direct Lending Unlevered JPN-A 2017 Fund, L.P | Closed |
| | Oaktree Opportunities Fund XI Feeder (Cayman) LP | Current |
| | Oaktree Power Opportunities Fund IV (Parallel) LP | Current |
| | Oaktree Power Opportunities Fund IV LP | Current |
| | Oaktree Specialty Lending Corporation | Current |
| | Oaktree Strategic Credit | Closed |
| | Ronald N. Beck | Former |
| Bentall Green Oak Canada LP | Crescent Capital Group, LP | Current |
| | SLC Management | Current |
| | TFG Asset Management LP | Current |
| Berkley Professional Liability | W.R. Berkley Corporation | Closed |
| Boston Management & Research | AMLI/BPMT Towne Square Partnership | Current |
| Eaton Vance | Morgan Stanley | Current |
| Eaton Vance Management | Morgan Stanley & Co. LLC | Closed |
| | Morgan Stanley Asia Limited | Current |
| | Morgan Stanley Infrastructure Inc. | Current |
| | Morgan Stanley Infrastructure Partners | Current |
| | Morgan Stanley Investment Management Limited | Current |
| | Morgan Stanley Real Estate Investing | Current |
| | Morgan, Stanley & Co. | Current |
| | Prime Property Fund | Closed |
| Brightspeed | AEPF III 34 S.à r.l. | Closed |
| | Apollo Capital Management, L.P. | Current |
| | Apollo Global Management, Inc. | Current |
| | Apollo Global Real Estate Management LP | Current |
| | Marc Rowan | Current |
| C Street Advisory Group LLC | C Street Advisory Group LLC | Current |

5

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | C Street Advisory Group Management LLC | Current |
| CenterPoint Energy Inc.<br>CenterPoint Energy Minnegasco | CenterPoint Energy, Inc. | Current |
| Chubb<br>Chubb ACE American Insurance Co.<br>Chubb Group of Insurance Cos. | Chubb Bermuda Insurance Ltd. | Current |
| CIGNA | Cigna Corporation<br>Cigna Health and Life Insurance Co. | Closed<br>Closed |
| CION Investment Corp. | CION Ares Diversified Credit Fund | Current |
| Cleco Power LLC | Cleco Corporate Holdings LLC | Current |
| Cole Schotz PC | Cole Schotz P.C. | Closed |
| Computer Design & Integration LLC | James B. Cherry<br><br>OEP Capital Advisors LP<br>OEP VIII General Partner LP<br>One Equity Partners<br>One Equity Partners VIII LP<br>One Equity Partners VIII-A LP | Current<br><br>Current<br>Current<br>Current<br>Current<br>Current |
| Constellation NewEnergy Inc. | Constellation Energy Corporation & Various of its affiliates | Current |
| Continental Casualty Co. | Celanese International Corp.<br>CNA Holdings LLC<br>Continental Casualty Company<br>Kevin Leidwinger | Current<br>Closed<br>Current<br>Former |
| Del Amo Fashion Center Operating Co. LLC | Taubman Centers, Inc., Independent Directors of the Board of Directors | Closed |
| Deloitte Tax LLP<br>Deloitte Touche Tohmatsu Ltd. | Deloitte Consulting LLP<br>Deloitte LLP<br>Deloitte Tax LLP<br>Deloitte USA LLP | Current<br>Current<br>Current<br>Current |
| Dominion Energy Inc.<br>Dominion Energy North Carolina<br>Dominion Energy Ohio<br>Dominion Energy South Carolina<br>Dominion VA Power | Dominion Energy Services, Inc. | Closed |

6

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| DTE Energy Co. | DTE Energy Company | Current |
| Dynegy Energy Services LLC | Vistra Energy Corp. | Current |
| Eastward Energy Inc. | Big Box REIT A Inc. | Current |
| | Public Sector Pension Investment Board | Current |
| FacilitySource LLC | CBRE Caledon Capital Management | Closed |
| | CBRE Global Investors, Inc. | Closed |
| | CBRE SPA | Current |
| | CBRE SpA Italy | Current |
| | CBRE, Inc. | Current |
| Fidelity | Fidelity Investments | Current |
| Fireman's Fund Insurance Co. | Allianz Capital Partners GmbH | Closed |
| | Pacific Investment Management Company, LLC | Current |
| First Horizon Bank | First Horizon Home Loan Corp. | Closed |
| | First Horizon National Corporation | Closed |
| | First Tennessee Bank National Association | Closed |
| Florida Power & Light Co. | NextEra Energy Capital Holdings Inc. | Current |
| | NextEra Energy Constructors LLC | Former |
| | NextEra Energy Inc. | Former |
| | NextEra Energy Marketing LLC | Former |
| | NextEra Energy Operating Services LLC | Former |
| | NextEra Energy Project Management LLC | Former |
| | NextEra Energy Resources LLC | Current |
| | NextEra Energy Resources, LLC | Current |
| | NextEra Energy Transmission Asset Acquisition Holdings LLC | Current |
| | NextEra Energy Transmission LLC | Current |
| | NextEra Energy Transmission Southwest LLC | Former |
| | NextEra Energy, Inc. | Current |
| | NextEra Grid Holdings LLC | Current |
| Google Inc. | Fitbit Inc. | Closed |
| | Waymo LLC | Current |
| Gordon Brothers Group LLC | Gordon Brothers Brands, LLC | Current |

7

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| | Gordon Brothers Partners Inc. | Closed |
| Green Mountain Power Corp. | Caisse de dépôt et placement du Québec | Current |
| Vermont Gas Systems Inc. | Énergir, L.P. | Current |
| | Ivanhoé Cambridge Inc. | Current |
| HG Vora Capital Management | HG Vora Capital Management LLC | Closed |
| Houlihan Lokey Capital Inc. | Houlihan Lokey EMEA, LLP | Closed |
| HSBC Bank plc | HSBC Global Services (UK) Limited | Current |
| | HSBC Holdings plc | Current |
| IntelliSource Inc. | Capgemini SE | Former |
| JPMorgan Chase Bank | Andrew Cohen | Current |
| Summit Utilities Arkansas Inc. | Highbridge Capital Management, LLC | Current |
| | J.P. Morgan AG | Closed |
| | J.P. Morgan Securities Asia Pacific Limited | Former |
| | J.P. Morgan Securities LLC | Current |
| | JPMorgan Asset Management (Australia) Limited | Closed |
| | JPMorgan Asset Management (Europe) SARL | Current |
| | JPMorgan Asset Management (UK) Ltd. | Current |
| | JPMorgan Chase & Co. | Closed |
| | JPMorgan Chase Bank National Association | Closed |
| | JPMorgan Chase Bank NA | Former |
| | JPMorgan Funds Limited | Current |
| | JPMorgan Investment Management Inc. - Global Special Situations | Current |
| | JPMorgan Investment Management Inc. - Infrastructure Investment Group | Current |
| | JPMorgan Investment Management Inc. - Life Sciences Private Capital | Current |
| | JPMorgan Infrastructure Investments Fund | Current |
| | JPMorgan Securities LLC | Closed |

8

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
|  | Kerwin Clayton | Former |
|  | Summit Utilities Inc. | Former |
| Kentucky Utilities Co. LG&E - Louisville Gas & Electric PPL Electric Utilities Rhode Island Energy | LG&E and KU Energy LLC | Current |
| KPMG LLC | KPMG (HK) | Current |
|  | KPMG Auditores, S.L. | Closed |
|  | KPMG International Cooperative | Closed |
|  | KPMG International Ltd. | Current |
|  | KPMG International Services Ltd. | Current |
|  | KPMG Law Firm | Current |
|  | KPMG LLP | Current |
|  | KPMG LLP (Canada) | Current |
|  | KPMG LLP (Singapore) | Current |
| Kyndryl Inc. | Kyndryl Inc. | Current |
| Limestone Millenia Plaza LLC | Orion Investors SARL | Former |
| LivePerson | LivePerson (UK) Limited | Current |
|  | LivePerson Australia Holdings Pty Ltd. | Current |
|  | LivePerson Australia Pty Ltd. | Current |
|  | LivePerson France SARL | Current |
|  | LivePerson Germany GmbH | Current |
|  | LivePerson Italy SRL | Current |
|  | LivePerson Japan K.K. | Current |
|  | LivePerson LLC | Current |
|  | LivePerson Ltd. | Current |
|  | LivePerson Netherlands B.V. | Current |
|  | LivePerson Singapore Pte. Ltd. | Current |
|  | LivePerson, Inc. | Current |
| Lloyd's of London | Lloyd's America, Inc. | Closed |
| Lund Co. Transandina Holdings LLC | Cushman & Wakefield, Inc. | Current |
| Mercer | Oliver Wyman Inc. | Current |
| Meta Platforms Inc. | Meta Platforms, Inc. | Current |
| MidAmerican Energy Co. NV Energy | Berkshire Hathaway Inc. | Current |
|  | BHE Renewables, LLC | Current |

9

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Pacific Power-Rocky Mountain Power | BHER Power Resources Inc. | Current |
| | BNSF Railway | Current |
| | Brilliant National Services, Inc. | Current |
| | FlightSafety International Inc. | Current |
| Minnesota, State of, Revenue | Minnesota Department of Human Rights | Current |
| | Minnesota, State of, Office of the Attorney General | Current |
| National Fuel Gas Co. | National Fuel Gas Company | Closed |
| | National Fuel Gas Midstream LLC | Closed |
| OptumRX PBM of IL Inc. | USHealth Group, Inc. | Current |
| Paypal | PayPal Holdings Inc. | Current |
| | PayPal Inc. | Current |
| Pennsylvania, Commonwealth of | Office of the General Counsel of Pennsylvania | Current |
| | Office of the Governor of Pennsylvania | Current |
| | Office of the Secretary of State of Pennsylvania | Current |
| | Pennsylvania, Commonwealth of, Office of the Secretary | Closed |
| Petrus Asset Management | Hillwood Development Company, LLC | Closed |
| PG&E | Pacific Gas and Electric Company | Current |
| PNC Bank | The PNC Financial Services Group, Inc. | Closed |
| Principle Life Insurance Co. | Principal Real Estate Investors LLC | Current |
| PSEG Long Island Public Service Electric & Gas Co. | Public Service Enterprise Group Inc. | Current |
| Quantum Health Inc. | Great Hill Advisors LLC | Current |
| | Great Hill Investment Holdings LP | Current |
| | Great Hill Management Holdings LP | Current |
| | Mark D. Taber | Current |
| | Michael A. Kumin | Current |
| | Quantum Health, Inc. | Current |
| Starr Marine (CAN) Starr Marine (UK) | Starr Principal Holdings, LLC | Closed |

10

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Starr Marine (US) | | |
| TD Canada Trust | TD Securities Inc. | Current |
| Travelers Indemnity Co.<br>Travelers Property Casualty Co. | The Travelers Companies, Inc. | Current |
| Trustmark National Bank | Trustmark | Current |
| UBS AG Stamford Branch | Seema Khanna | Former |
| | UBS AG, Board of Directors | Current |
| | UBS AG, Hong Kong Branch | Closed |
| | UBS AG, London Branch | Current |
| | UBS Asset Management (Americas) Inc. | Current |
| | UBS Asset Management Funds Limited | Current |
| | UBS Hedge Fund Solutions LLC | Current |
| | UBS International Infrastructure Fund II (A) LP | Former |
| | UBS International Infrastructure Fund II (B) LP | Former |
| | UBS International Infrastructure Fund II (C) LP | Former |
| | UBS Investment Bank | Current |
| | UBS O'Connor LLC | Current |
| | UBS Securities Hong Kong Ltd. | Closed |
| | UBS Securities LLC | Current |
| | UBS Warburg | Current |
| Verizon Business Global LLC<br>Verizon Communications Inc.<br>Verizon Wireless Services LLC | Verizon Communications Inc. | Current |
| Victoria's Secret Stores Brand Management LLC | Victoria's Secret & Co. | Current |
| | VS Service Co. LLC | Current |
| Washington Gas Resources Corp. | WGL Holdings, Inc. | Closed |
| Washington Prime | Washington Prime Group Inc. | Current |
| Wells Fargo & Co. | Norwest Equity Partners | Current |
| | Wells Fargo Asset Management Luxembourg S.A. | Current |
| | Wells Fargo Bank, N.A. | Current |
| | Wells Fargo Securities LLC | Current |

11

| Name of Entity Searched | Name of Entity and/or Affiliate of Entity, that is a K&E Client | Status |
|---|---|---|
| Whitebox Asymmetric Partners LP<br>Whitebox Multi-Strategy Investment Group | Whitebox Advisors LLC | Current |
| WhiteHorse<br>WhiteHorse VII Ltd. | H.I.G. Acquisition Corp. | Closed |
| | H.I.G. Advantage Buyout Fund, L.P. | Closed |
| | H.I.G. Bayside Debt & LBO Fund II LP | Closed |
| | H.I.G. Bayside Loan Opportunity (Cayman) Fund II, L.P. | Current |
| | H.I.G. Bayside Loan Opportunity Fund II, L.P. | Current |
| | H.I.G. Capital International Advisors, LLP | Closed |
| | H.I.G. Capital Management Inc. | Current |
| | H.I.G. Capital Partners II, L.P. | Current |
| | H.I.G. Capital Partners III, L.P. | Current |
| | H.I.G. Europe Capital Partners, L.P. | Current |
| | H.I.G. Europe Middle Market LBO Fund LP | Closed |
| | H.I.G. European Capital Partners LLP | Current |
| | H.I.G. Middle Market LBO Fund III, L.P. | Closed |
| | H.I.G. Middle Market LLC | Current |
| | H.I.G. Realty Partners | Current |
| | H.I.G. Technology Partners A.L.P. | Current |
| | H.I.G. Venture Investments, L.P. | Current |
| | H.I.G. Venture Partners, L.P. | Current |
| | Whitehorse Liquidity Partners | Current |
| | Whitehorse Liquidity Partners V LP | Current |

KE 8967096

# EXHIBIT C

**Marcum Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| In re: | Chapter 11 |
| DAVID'S BRIDAL, LLC, *et al.*,[1] | Case No. 23-13131 (CMG) |
| Debtors. | (Jointly Administered) |

**DECLARATION OF JAMES MARCUM IN SUPPORT**
**OF THE DEBTOR'S APPLICATION FOR THE ENTRY OF AN ORDER**
**AUTHORIZING THE RETENTION AND EMPLOYMENT OF KIRKLAND &**
**ELLIS LLP AND KIRKLAND & ELLIS INTERNATIONAL LLP AS ATTORNEYS FOR**
**THE DEBTORS AND DEBTORS IN POSSESSION EFFECTIVE AS OF APRIL 17, 2023**

I, James Marcum, Chief Executive Officer of David's Bridal, LLC and its affiliated debtors and debtors in possession (collectively, the "Debtors") being duly sworn, state the following under penalty of perjury:

1.  I am the Chief Executive Officer of the Debtors, with their principal place of business located at 1001 Washington Street, Conshohocken, Pennsylvania, 19428.

2.  I submit this declaration (this "Declaration") in support of the *Debtors' Application for Entry of an Order Authorizing the Retention and Employment of Kirkland & Ellis LLP as Attorneys for the Debtors and Debtors in Possession Effective as of April 17, 2023* (the "Application").[2]  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are David's Bridal, LLC (4563); DBI Midco, Inc. (7392); DBI Holdco II, Inc. (7512); DBI Investors, Inc. (3857); David's Bridal Canada, Inc. (N/A); Blueprint Registry, LLC (2335).  The location of Debtor David's Bridal, LLC's service address in these chapter 11 cases is 1001 Washington Street, Conshohocken, Pennsylvania 19428.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

**The Debtors' Selection of Counsel**

60.    The Debtors recognize that a comprehensive review process is necessary when selecting and managing chapter 11 counsel to ensure that bankruptcy professionals are subject to the same client-driven market forces, scrutiny, and accountability as professionals in non-bankruptcy engagements.

61.    Prior to the Petition Date, Kirkland represented the Debtors in various debt financing transactions and is familiar with the Debtors' business operations and corporate structure.  Ultimately, the Debtors retained Kirkland because of its extensive experience in corporate reorganizations, both out-of-court and under chapter 11 of the Bankruptcy Code.  More specifically, Kirkland is familiar with the Debtors' business operations and many of the potential legal issues that may arise in the context of these chapter 11 cases.  I believe that Kirkland is both well qualified and uniquely able to represent the Debtor in these chapter 11 cases in an efficient and timely manner.

**Rate Structure**

62.    In my capacity as Chief Executive Officer, I am responsible for supervising outside counsel retained by the Debtors in the ordinary course of business.  Kirkland has informed the Debtors that its rates for bankruptcy representations are comparable to the rates Kirkland charges for non-bankruptcy representations.  As discussed below, I am also responsible for reviewing the statements regularly submitted by Kirkland, and can confirm that the rates Kirkland charged the Debtors in the prepetition period are the same as the rates Kirkland will charge the Debtors in the postpetition period.

**Cost Supervision**

63.     The Debtors have approved the prospective budget and staffing plan for the period from April 17, 2023 to July 31, 2023, recognizing that in the course of a large chapter 11 case like these chapter 11 cases, it is possible that there may be a number of unforeseen fees and expenses that will need to be addressed by the Debtors and Kirkland.  The Debtors further recognize that it is their responsibility to monitor closely the billing practices of their counsel to ensure the fees and expenses paid by the estate remain consistent with the Debtors' expectations and the exigencies of the chapter 11 cases.  The Debtors will continue to review the statements that Kirkland regularly submits, and, together with Kirkland, amend the budget and staffing plans periodically, as the case develops.

64.     As they did prepetition, the Debtors will continue to bring discipline, predictability, client involvement, and accountability to the counsel fees and expenses reimbursement process.  While every chapter 11 case is unique, these budgets will provide guidance on the periods of time involved the level of the attorneys and professionals that will work on various matters, and projections of average hourly rates for the attorneys and professionals for various matters.

*[Remainder of Page Intentionally Left Blank]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my knowledge and belief.

Dated:  May 16, 2023                              Respectfully submitted,

                                                  */s/ James Marcum*
                                                  _____
                                                  Name: James Marcum
                                                  Title:   Chief Executive Officer